# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| vs. | Case No. 18-20025-01-DDC |
| GEORGE BUSH, JR. (01), | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter came before the court based on defendant George Bush, Jr.'s Motion for a *James* Hearing (Doc. 84). The court granted the motion on May 9, 2019. Doc. 126. The court's Second Amended Scheduling Order required the government to disclose those statements it plans to offer into evidence under Fed. R. Evid. 801(d)(2)(E). Doc. 152 at 1. The government complied with that deadline. *See* Doc. 212. Then, the court conducted a *James* hearing on February 7 and February 11, 2020. Doc. 217; Doc. 223.

After reviewing the evidence adduced at the hearing, the court, consistent with Fed. R. Evid. 104(a), finds that the government has carried part of its burden under Fed. R. Evid. 801(d)(2)(E). Namely, it has established that a conspiracy existed and that George Bush, Jr., Albert Brown, Maurice Bluett, Isaiah Lewis, Benjamin Mims, James Castell, Rodney Bush, and at least two unidentified men were members of it.

The court is mindful that it must consider and decide whether certain prerequisites exist before allowing a jury to hear out-of-court statements offered under Fed. R. Evid. 801(d)(2)(E). "There must be evidence that there was a conspiracy involving the declarant [of the out-of-court statements to be offered] and the nonoffering part[ies], and that the statement was made 'during

the course of and in furtherance of the conspiracy.'" *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (quoting Fed. R. Evid. 801(d)(2)(E)). Those determinations are preliminary ones and, under Fed. R. Evid. 104(a), and responsibility for deciding them rests with the court. The preponderance of the evidence standard applies to these determinations. *See Bourjaily*, 483 U.S. at 176.

Our Circuit has outlined two alternatives a district court may use to resolve these preliminary questions. First, it may conduct a *James* hearing. *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998). In a *James* hearing, the court, outside the jury's presence, hears evidence and decides whether the predicate conspiracy existed. *See, e.g.*, *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (discussing *United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979)). Or, second, and alternatively, the district court may admit the out-of-court statements provisionally, but "'with the caveat that . . . the party offering [it] must prove the existence of the predicate conspiracy through trial testimony or other evidence.'" *Gonzalez-Montoya*, 161 F.3d at 649 (quoting *Owens*, 70 F.3d at 1123 (alternation in original)).

The Circuit has expressed a strong preference for the first approach and so, here, the court required two things from the government. First, it required the government to disclose specific facts its evidence will utilize at trial to prove the existence of a conspiracy. Doc. 128 at 2. The government addressed this requirement with testimony from Federal Bureau of Investigation Special Agent Douglas McKelway and provided the court with a summary of the statements, video clips (some with transcripts), and photographs it expects to offer at trial. The court now has heard that testimony and reviewed this evidence. Second, the court required the government to disclose all coconspirator statements it plans to offer under Fed. R. Evid.

801(d)(2)(E). *Id.* The government also complied with this requirement. Specifically, it filed a Disclosure of Statements Admissible Pursuant to Fed. R. Evid. 801(d)(2)(E) (Doc. 212).

The court now has considered the evidence germane to the first step of this process. That is, the court has heard the agent's summary testimony of evidence the government will adduce at trial aiming to prove a conspiracy and defendants' participation in it. The court now can rule that the government, consistent with its burden under *Bourjaily* and Rule 104(a), has shown by a preponderance of evidence that a conspiracy existed, and the defendants, and various unindicted individuals, participated in it. The rest of this Order outlines the basis for the court's conclusions.

## I.   Legal Standard

The court measures the sufficiency of the government's showings by the well-established definition of an illegal conspiracy:

> To prove a conspiracy, the government must demonstrate: "(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent."

*United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009) (quoting *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007)). "[A] focal point of the [conspiracy] analysis is whether the alleged coconspirators' conduct exhibited interdependence." *United States v. Edwards*, 69 F.3d 419, 432 (10th Cir. 1995). Interdependence exists where coconspirators "inten[d] to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992).

For obvious reasons, proving a conspiracy does not require evidence that the participants explicitly agreed to an illegal bargain in a fully integrated, memorialized meeting of the minds. "Circumstantial evidence alone is often sufficient to demonstrate interdependence; indeed, it is

often the only evidence available to the government." *Caldwell*, 589 F.3d at 1329 (citing *United States v. Hutchinson*, 573 F.3d 1011, 1035 (10th Cir. 2009)). Nor does this standard require proof of an extensive operating history. "[A] single act can be sufficient to demonstrate interdependence." *Id.* (citing *United States v. Hamilton*, 587 F.3d 1199, 1208–09 (10th Cir. 2009) (determining that a single instance of traveling to collect another drug dealer's debts was sufficient to show defendant became part of a large and wide-reaching conspiracy)).

## II. Summary of the Evidence

At the *James* hearing, the government presented testimony from FBI Special Agent Douglas McKelway, the lead case agent in the germane investigation. Special Agent McKelway's testimony consisted of background information about the scope and mechanics of the investigation into defendants' activities by the Kansas City, Missouri Police Department ("KCPD") and the FBI. The investigation began in January 2017 and continued until November 2017. During the investigation, the KCPD and the FBI used confidential informants and undercover officers to complete 16 controlled buys[1] of black tar heroin from various defendants. Eventually, the investigators applied for and received two Title III orders allowing interception of oral communications and then, monitoring and recording of visual conduct inside a house frequented by suspected members of the conspiracy at 823 Parallel, Kansas City, Kansas ("823 Parallel").

The investigation revealed a Drug Trafficking Organization selling black tar heroin in the Kansas City metropolitan area. Special Agent McKelway testified that Mr. Bush led the DTO

---

[1] Although the court generally tries to avoid using the "colloquial" form of the word "buy" as a noun, *see* Bryan A. Garner, *Garner's Modern American Usage*, 121 (2d ed. 2003), the court recognizes that the phrase "controlled buy" commonly is used to describe purchases of controlled substances orchestrated by law enforcement. Indeed, that is the verb employed by the parties' papers in this case. So, somewhat reluctantly, this Order refers to such transactions in this case as "controlled buys."

4

and that the group had its own jargon—using terms such as "clock" (referring to a digital scale to weigh controlled substances). Special Agent McKelway identified three groups of coconspirators: (1) indicted individuals, (2) known, unindicted individuals, and (3) unknown and unindicted individuals. The court summarizes his testimony, below.

### A. Indicted Individuals

#### 1. George Bush, Jr.

Special Agent McKelway identified Mr. Bush as the DTO's leader. Mr. Bush was present for the first controlled but on January 24, 2017, and subsequent controlled buys on February 1, 2017, March 9, 2017, April 21, 2017, and October 3, 2017. He allowed the group to use his white Chevy Tahoe and access 823 Parallel, a house his father, George Bush, Sr., owned. Video surveillance inside 823 Parallel shows Mr. Bush taking heroin out of the refrigerator, weighing it for repackaging, handling money, cooking heroin with other ingredients, and discussing sales with both known and unidentified individuals.

#### 2. Albert Brown

Special Agent McKelway testified that Mr. Brown was law enforcement's first contact within the DTO. Mr. Brown was present for 15 controlled buys, including the first one on January 24, 2017. At least one phone call to Mr. Brown proceeded all the controlled buys. Video surveillance inside 823 Parallel shows Mr. Brown weighing heroin for repackaging, discussing heroin sales and prices, and selling heroin to unidentified individuals. Mr. Brown has pleaded guilty to conspiracy to distribute more than 100 grams of heroin. Doc. 138; Doc. 139.

#### 3. Maurice Bluett

Maurice Bluett was present at five controlled buys, including the first one on January 24, 2017. Special Agent McKelway described Mr. Bluett as the DTO's "muscle"—he provided security for the group. Mr. Bluett carried a gun to several of the controlled buys and displayed it

5

to buyers during some of the transactions. Surveillance video shows Mr. Bluett carrying a gun on several occasions, discussing heroin sales with other coconspirators, and providing heroin to Isaiah Lewis. Mr. Bluett has pleaded guilty to conspiracy to distribute more than 100 grams of heroin. Doc. 155; Doc. 156.

### 4. Isaiah Lewis

Isaiah Lewis never was present for any of the controlled buys. He first was identified during the Title III video surveillance at 823 Parallel. Special Agent McKelway testified that Mr. Lewis frequently was inside the residence. Surveillance footage showed Mr. Lewis and Mr. Brown leaving 823 Parallel with heroin on October 27, 2017. Mr. Lewis returned to the house to get a gun and car keys. On November 4, 2017, Mr. Bluett gave Mr. Lewis some heroin and referred to it as a "nickel." Special Agent McKelway testified that a "nickel" is about 5 grams of heroin. Mr. Lewis has pleaded guilty to conspiracy to distribute more than 100 grams of heroin. Doc. 173; Doc. 174.

### 5. Benjamin Mims

Mr. Mims was not present for any of the controlled buys. He was identified during the Title III video surveillance at 823 Parallel. The surveillance footage shows that Mr. Mims was present at 823 Parallel on November 4, 2017, and that he discussed a potential supplier with Mr. Bush. Mr. Mims is seen handling heroin at the house that same day. Special Agent McKelway testified that Kansas Highway Patrol officers stopped Mr. Mims that evening. The officers found heroin in Mr. Mims's possession. Mr. Mims has pleaded guilty to possessing heroin with intent to distribute. Doc. 102; Doc. 103.

### B. Known, Unindicted Individuals

#### 1. James Castell

Mr. Castell is Mr. Bush's repeat heroin customer. On October 27, 2017, Mr. Castell appeared at 823 Parallel and offered to sell drugs on Mr. Bush's behalf. Special Agent McKelway testified that Mr. Castell is an unindicted member of the conspiracy.

#### 2. Rodney Bush

On October 31, 2017, surveillance footage captured Rodney Bush weighing heroin. And, surveillance shows him conversing with Mr. Bush and Mr. Bluett about a process used to make the heroin more malleable. Special Agent McKelway testified that, in his opinion, this conversation connected Rodney Bush to the conspiracy because it centered on efforts to prepare heroin to sell to an unknown user.

### C. Unknown, Unindicted Individuals

The government's presentation included evidence of two unidentified males who interacted with coconspirators.

*First*, on October 27, 2017, surveillance footage shows an unknown white male at 823 Parallel ("Unidentified Male A"). Unidentified Male A entered the home with a digital scale and purchased heroin from Mr. Bush. Unidentified Male A asked Mr. Bush if the heroin was a new variety. And, the two men discussed a mutual acquaintance's recent felony drug charges. Special Agent McKelway testified that Unidentified Male A's reference to a new variety of heroin implies that Unidentified Male A previously had purchased heroin from Mr. Bush.

*Second*, also on October 27, 2017, surveillance footage shows Mr. Bush on the phone with a second unidentified male ("Unidentified Male B"). Unidentified Male B discussed a $500 heroin purchase from Mr. Bush. Special Agent McKelway testified that Unidentified Male B likely was not just a user because $500 would have purchased a distribution quantity of heroin.

**III. Analysis**

The testimony of Special Agent McKelway and the other evidence presented by the government at the *James* hearing represents the only evidence on the current question, *i.e.*, does a preponderance of the evidence show a conspiracy existed. Mr. Bush declined to offer any evidence. And, the court finds, the government's evidence shows by a preponderance of the evidence that a conspiracy existed, and that Albert Brown, George Bush, Jr., Maurice Bluett, Isaiah Lewis, Benjamin Mims, James Castell, Rodney Bush, Unidentified Male A, and Unidentified Male B participated in it.

To prove a conspiracy, the government must establish:

(1) that two or more persons agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged coconspirators were interdependent.

*Caldwell*, 589 F.3d at 1328. By a preponderance of the evidence, the government has shown that at least seven individuals took part in a heroin distribution conspiracy in Kansas City. Undercover officers completed 16 controlled buys from various members of the DTO. And Title III surveillance revealed more drug trafficking activity that occurred inside 823 Parallel.

Based on the government's evidence, the court finds that Albert Brown, George Bush, Jr., Maurice Bluett, Isaiah Lewis, Benjamin Mims, James Castell, Rodney Bush, Unidentified Male A, and Unidentified Male B, all voluntarily acted together in a conspiracy to distribute heroin in the Kansas City metro area. In the following sections, the court considers the government's evidence connecting these defendants to the alleged conspiracy and identifies the date when each coconspirator joined the conspiracy.[2]

---

[2] The court bases these dates on the evidence presented during the *James* hearing. These decisions about timing do not eliminate the possibility that other evidence adduced at trial might establish earlier enrollments in the conspiracy.

### A. Albert Brown

The government's evidence first identified Albert Brown at the first controlled buy on January 24, 2017. Mr. Brown was present at 15 of the 16 controlled buys. And the surveillance footage frequently shows Mr. Brown engaging in drug trafficking activity at 823 Parallel. The court thus finds that a preponderance of the evidence shows that Mr. Brown was a member of the conspiracy and that he joined the conspiracy by January 24, 2017.

### B. George Bush, Jr.

The court concludes that the government has connected Mr. Bush to the conspiracy by a preponderance of the evidence. The evidence shows that Mr. Bush was the driver at the first controlled buy on January 24, 2017. When the undercover officer approached the vehicle, Mr. Bush asked him if he was waiting for someone, and then directed the undercover officer to Mr. Brown, who was in the backseat of the vehicle driven by Mr. Bush. Also, Mr. Bush allowed coconspirators to use the house at 823 Parallel and his vehicle for drug trafficking purposes. Title III surveillance footage shows Mr. Bush weighing heroin, discussing heroin pricing, selling heroin, cooking heroin, and offering advice to other coconspirators about heroin sales. The court finds that a preponderance of the evidence shows that Mr. Bush joined the conspiracy by January 24, 2017.

### C. Maurice Bluett

The government first identified Mr. Bluett at the first controlled buy on January 24, 2017. He was present at five of the controlled buys. Mr. Bluett provided security for the DTO, bringing a gun to several controlled buys. Surveillance video shows Mr. Bluett carrying a gun on several occasions, discussing heroin sales with other coconspirators, and providing heroin to Isaiah Lewis. The court concludes that a preponderance of the evidence shows that Mr. Bluett joined the conspiracy by January 24, 2017.

### D. Isaiah Lewis

Although Mr. Lewis does not appear at any controlled buys, the Title III surveillance footage shows that he was present at 823 Parallel and took part in drug trafficking activities. On October 27, 2017, surveillance footage shows Mr. Lewis accompanying Mr. Brown to make a heroin sale. And, on November 4, 2017, Mr. Lewis and Mr. Bush worked together to calibrate a scale used by the DTO to weigh its inventory. On that same day, Mr. Bluett tossed about 5 grams of heroin to Mr. Lewis, calling it a "nickel." The court concludes that a preponderance of the evidence shows that Mr. Lewis had joined the conspiracy by October 27, 2017.

### E. Benjamin Mims

Mr. Mims also was not present for any controlled buys. Investigators identified him during the Title III video surveillance of activities inside 823 Parallel. Mr. Mims was present at 823 Parallel on November 4, 2017, where he discussed a potential heroin supplier with Mr. Bush. Mr. Mims handled heroin at the house on the same day. And, later that evening, Mr. Mims was pulled over by Kansas Highway Patrol officers who found heroin in his possession. The court concludes that a preponderance of the evidence supports an inference that Mr. Mims was a member of the conspiracy, and that he had joined the conspiracy by November 4, 2017.

### F. James Castell

The court finds that a preponderance of the evidence shows that Mr. Castell had joined the conspiracy by October 27, 2017. Although he was not indicted in this case, the government's evidence shows Mr. Castell engaging in drug trafficking activity at 823 Parallel on October 27, 2017. He purchased drugs from Mr. Bush and offered to sell drugs on Mr. Bush's behalf.

### G. Rodney Bush

Title III surveillance footage shows Rodney Bush weighing heroin and speaking with coconspirators about various methods to improve the consistency of the DTO's heroin on

October 31, 2017. The court concludes a preponderance of evidence shows that unindicted coconspirator Rodney Bush had joined the conspiracy by October 31, 2017.

### H. Unidentified Coconspirators

Special Agent McKelway testified that there likely were unidentified coconspirators involved in the DTO. A preponderance of the evidence presented at the *James* hearing supports an inference that both Unidentified Male A and Unidentified Male B had joined the conspiracy by October 27, 2017. First, the evidence shows that Unidentified Male A purchased heroin from Mr. Bush at 823 Parallel on October 27, 2017. Special Agent McKelway testified that Unidentified Male A is likely a heroin distributor because he brought his own scale to the transaction. Second, the evidence shows that Unidentified Male B also had joined the conspiracy because he sought to purchase a distribution quantity of heroin from Mr. Bush on October 27, 2017.

This finding does not, by itself, clear the way for admission into evidence of any particular statement offered under Rule 801(d)(2)(e). In contrast, this finding might assist an offer under this rule if, for example, the government could demonstrate that a particular out-of-court statement was made by some individuals referenced as Unidentified Male A or B.

### IV. Conclusion

The government has demonstrated that a conspiracy existed by a preponderance of the evidence. Also, the court finds under Fed. R. Evid. 104 that a preponderance of the evidence establishes that Albert Brown, George Bush, Jr., Maurice Bluett, Isaiah Lewis, Benjamin Mims, James Castell, Rodney Bush, Unidentified Male A, and Unidentified Male B were members of the conspiracy. The court recognizes that other individuals may have joined the conspiracy. But the evidence presented at the *James* hearing didn't show it to be so.

The admissibility (or lack of it) of specific statements by these coconspirators depends on showings that the court can't currently evaluate. The court thus defers for trial the decision whether putative coconspirator statements qualify for admission under Fed. R. Evid. 801(d)(2)(E). Those decisions must wait until the court can assess those statements in the fuller and richer context of trial evidence.

**IT IS SO ORDERED.**

**Dated this 26th day of February 2020, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**