IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

GEORGE BUSH, JR. (01),

     Defendant.

Case No. 18-20025-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on prisoner George Bush, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 399). Mr. Bush argues both his trial and appellate counsel provided ineffective assistance that violated the guarantees of his Sixth Amendment right to counsel. He alleges errors occurred at trial, sentencing, and on appeal. And he argues these errors had a cumulative effect violating his right to a fair trial. The court evaluates Mr. Bush's arguments, below, but begins by outlining the procedural and factual background.

## I.    Procedural Background

On April 11, 2018, the government charged Mr. Bush with various crimes involving an alleged heroin trafficking conspiracy. *See generally* Doc. 1. On January 15, 2020, the government filed a Superseding Indictment charging Mr. Bush with conspiracy to distribute, and possess with intent to distribute, more than 100 grams of heroin. Doc. 205 at 1. It also charged Mr. Bush with one count of distributing and four counts of possessing with intent to distribute heroin, conspiring to maintain a residence for unlawfully storing and distributing heroin, and

knowingly possessing a pistol in furtherance of a drug trafficking crime. *See id.* at 1–3. After a six-day trial, a jury convicted Mr. Bush of the conspiracy charge, all five distribution or possession counts, and the charge of conspiring to maintain a residence for unlawfully storing and distributing heroin. *See* Doc. 254. It acquitted Mr. Bush on the firearm charge. *Id.* at 7. On defendant's motion for judgment of acquittal, the court later set aside the jury's verdict on the 21 U.S.C. § 856(a)—conspiracy to maintain a residence for storing and distributing heroin—charge. Doc. 263 at 4 (granting motion based on erroneous jury instructions).

This court sentenced Mr. Bush to 210 months imprisonment and 4 years supervised release.[1] Doc. 303 at 2–3. Mr. Bush appealed his sentence to the Tenth Circuit, challenging application of a three-level aggravating role enhancement under U.S.S.G. § 3B1.1(b) and the court's calculation of his attributable drug quantity—2.21 kilograms of heroin. *United States v. Bush*, No. 21-3071, 2022 WL 13670227, at *1 (10th Cir. Oct. 24, 2022). The Tenth Circuit affirmed Mr. Bush's sentence. *Id.* at *9.

On January 26, 2024, Mr. Bush filed this timely § 2255 motion, asking the court to vacate his sentence because of ineffective assistance of trial and appellate counsel. *See generally* Doc. 399; Doc. 402.

## II.    Factual Background

The court provides factual background, below, as relevant to Mr. Bush's ineffective assistance claims. Appointed counsel Shazzie Naseem represented Mr. Bush at trial/sentencing and appointed counsel John C. Arceci represented Mr. Bush on appeal. Doc. 399 at 11. The court draws these facts from the record and allegations in Mr. Bush's § 2255 briefing.

---

[1]    The court sentenced Mr. Bush to 4 years supervised release on Count 1, and 3 years on Counts 2, 4, 5, 7, and 8, all to run concurrently. Doc. 303 at 3.

### *Pretrial Background*

Start with Mr. Bush's plea offer and pretrial detention. After three of Mr. Bush's codefendants received plea offers, Mr. Bush and Mr. Naseem discussed whether he could secure a similar offer from the government. Doc. 402-3 at 2 (Bush Decl. ¶ 7). According to Mr. Bush, Mr. Naseem informed him that "the government was playing hard ball[.]" *Id.* "Counsel stated the government wanted to make [him] responsible for a number of enhancements and that was the reason for their hard stance." *Id.* Mr. Bush was offered a plea, though. It would have allowed the government to request up to 40 years, while Mr. Bush could request as low as five. *Id.* Mr. Bush felt he "had no option but to take the case to the jury in order to allow the actual evidence to be presented[.]" *Id.* Mr. Bush's codefendants all accepted plea deals—of the bunch, the longest sentence was 104 months. Doc. 277 at 7 (PSR ¶¶ 8–12).

Before trial, Mr. Bush was detained at Corrections Corporation of America (CCA) in Leavenworth, Kansas. Doc. 402 at 15. Mr. Bush alleges his cell didn't lock and could open easily from the outside. *Id.* at 16. He alleges limited access to legal material, the court, and "outside his cell." *Id.* Mr. Bush also describes violent conditions, poor management, and eavesdropping on privileged communications. *See id.* at 15–16. Mr. Bush emphasizes the deplorable conditions at CCA as decried by "individuals who are highly respected by this Court and the government." *Id.* at 16.

### *Trial Strategy and Drug-Weight*

Mr. Bush and Mr. Naseem had "serious discussions about trial strategies and sentence preparation." Doc. 402-3 at 2 (Bush Decl. ¶ 8). Mr. Bush forwarded to counsel "information which was relevant to [his] case." *Id.* He "clearly explained in letters and in person to counsel that trial prep was solely to challenge the drug weight/individual drug quantity, possible

leadership enhancements, and the 924(c), gun enhancement and the drug premises charge and possible enhancement." *Id.* at 2–3 (Bush Decl. ¶ 8).  From Mr. Bush's perspective, the trial's purpose wasn't "to argue [Mr. Bush] didn't commit a crime." *Id.* at 3 (Bush Decl. ¶ 8).  Instead, Mr. Bush explained that the trial evidence would show he wasn't responsible for the quantity of drugs alleged in the government's proffers because "a lot of the proffers were actually not even true." *Id.* (Bush Decl. ¶ 9).  And he told Mr. Naseem that his "guns were legal" and never used "for any type of drug trade" because "the people [he] dealt with are longtime friends." *Id.*  And Mr. Bush maintains that he was present for just 3 of 16 controlled buys.  Doc. 402 at 12.

In his closing argument, Mr. Naseem urged the jury to evaluate the "verified evidence[.]" Doc. 343 at 78 (Trial Tr. 1409:5).  He explained that "as it relates to George Bush, Jr., we have one verifiable controlled buy." *Id.* at 82 (Trial Tr. 1413:1–2).  But the jury concluded Mr. Bush was responsible for more than 100 grams of heroin.  Doc. 254 at 2 (Jury Verdict).

### *Jury Instructions and Prosecutor's Closing Statement*

Jury Instruction No. 15 explained how the jury should calculate Mr. Bush's drug quantity responsibility.  Doc. 253 at 20 (Instruction No. 15).  His trial counsel didn't object to this instruction.  *See* Doc. 402 at 13–14.

 After the court read the jury instructions, the parties provided closing arguments.  The prosecutor made the following statement near the end of his argument:

> Ladies and gentlemen, the presumption of innocence that cloaks this defendant, George Bush, Jr., prior to and during the trial no longer cloaks him.  The government has proven beyond a reasonable doubt that he committed the eight crimes alleged in the superseding indictment.

Doc. 343 at 75–76 (Trial Tr. 1406:24–1407:3).  Mr. Naseem never objected to nor corrected the prosecutor's statement.  *See id.* at 75–116 (1406:24–1447:25).  The jury instructions—read to the jury immediately before closings—instructed that the presumption of innocence "remains with a

defendant throughout the trial" and is sufficient to find the defendant not guilty, "unless the jurors are satisfied of the defendant's guilt beyond a reasonable doubt, from all the evidence." Doc. 253 at 9 (Instruction No. 7).

### *Sentencing*

Mr. Bush's sentencing proceedings spanned four hearings and eight months. Doc. 282 (minute entry August 13, 2020); Doc. 284 (minute entry August 14, 2020); Doc. 292 (minute entry December 21, 2020); Doc. 301 (minute entry April 13, 2021). Before sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR). Doc. 277. And the parties presented numerous PSR objections. *See id.* at 42–62; Doc. 280 (Mr. Bush's Sentencing Memorandum); Doc. 281 (government's Sentencing Memorandum). The court ruled many objections orally, but also issued a 59-page written Order ruling the remainder. *See* Doc. 302 at 1.

Chief among the sentencing disputes was Mr. Bush's personally accountable drug quantity, an important ingredient in a guideline calculation. U.S. Sent'g Guidelines Manual § 2D1.1(a)(5) (U.S. Sent'g Comm'n 2018);[2] Doc. 302 at 2. The PSR held Mr. Bush responsible for 3.21 kilograms of heroin. Doc. 277 at 27 (PSR ¶ 129). That quantity resulted in a base offense level of 32. *Id.* The PSR added a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and a two-level enhancement for maintaining a premises for distributing controlled substances under U.S.S.G. § 2D1.1(b)(12). *Id.* (PSR ¶¶ 130, 131). The PSR also added a four-level enhancement for Mr. Bush's aggravating role in the offense—as an

---

[2]    The court refers to the 2018 version of the Sentencing Guidelines Manual throughout this Order. That's the version used to prepare Mr. Bush's PSR and the version in effect at the time of the sentencing. *See* Doc. 277 at 26 (PSR ¶ 126). The court thus uses the 2018 manual here, although it hasn't identified any material differences between relevant portions of the 2018 and current Sentencing Guidelines Manual.

organizer or leader of criminal activity involving five or more participants.  *Id.* at 28 (PSR ¶ 133) (applying enhancement under U.S.S.G. § 3B1.1(a)).  Mr. Bush had a criminal history category of I.  *Id.* at 32 (PSR ¶¶ 153–54).  The advisory guideline range calculated by the PSR was 292 to 365 months imprisonment.  *Id.* at 37 (PSR ¶ 185).

Through counsel, Mr. Bush objected to several of the enhancements specifically.  He objected that the firearm enhancement wasn't applicable because the evidence didn't support it. *Id.* at 47–48 (objection to PSR); Doc. 280 at 17 (arguing firearm enhancement wasn't applicable based on trial evidence); Doc. 348 at 13–15 (Sent'g Tr. 459:25–461:12) (oral motion to reconsider firearm enhancement ruling).  The court rejected this argument, evaluating the evidence and the requisite legal standard.  Doc. 348 at 10–13 (Sent'g Tr. 456:23–459:21).  Mr. Bush also objected to the aggravating role enhancement, arguing the evidence didn't show Mr. Bush was an organizer or leader, controlling others in performing drug transactions.  Doc. 277 at 48 (PSR ¶¶ 287–88).  The court overruled the objection, evaluating the trial and sentencing evidence based on several factors listed in the Sentencing Guidelines Manual.  Doc. 348 at 24–28 (Sent'g Tr. 470:12–474:22).  Ultimately, the court concluded Mr. Bush qualified for the three-level enhancement under U.S.S.G. § 3B1.1(b).[3]  Doc. 302 at 58.  Last, Mr. Bush objected to the drug premises enhancement because the court granted defendant's motion for judgment of

---

[3]     The court ruled originally that Mr. Bush qualified for the enhancement contemplated by § 3B1.1(c), not (b).  Doc. 348 at 37 (Sent'g Tr. 483:3–4).  The government asked the court whether it had evaluated other trial and sentencing evidence in making its decision.  *Id.* at 37–38, 41 (Sent'g Tr. 483:9–484:5, 487:1–13) (identifying a recorded conversation where Mr. Bush had a conversation with an older gentleman who had said codefendants Bluett and Lewis were "up under" Mr. Bush and interviews with Allison Brown stating that Mr. Bush was the leader and Mr. Bush had instructed Albert Brown how to mix each ingredient with the heroin); Doc. 281 at 36–37 (government's Sentencing Memorandum identifying this evidence for role enhancement).  In its Order ruling the PSR objections, the court revised its oral ruling under § 3B1.1(c), concluding it erroneously applied the two-level enhancement.  Doc. 302 at 58.  Having reviewed the government's evidentiary emphasis, the court then corrected its ruling to apply the three-level manager/supervisor enhancement under § 3B1.1(b).  *Id.* at 57–58.

acquittal on that count.  Doc. 277 at 48 (PSR ¶ 285).  The court overruled the objection,

concluding that the dismissal of the drug premises charge—because of an instructional error—

didn't foreclose finding the factual predicate necessary for the enhancement at sentencing.  Doc.

348 at 17 (Sent'g Tr. 463:1–10).  Applying two U.S.S.G. factors, the court conducted a lengthy

factfinding inquiry, and overruled Mr. Naseem's motion to reconsider.  *Id.* at 17–23 (463:11–

469:11).

The parties also disputed the PSR's calculation of Mr. Bush's attributable drug quantity.

Mr. Bush objected that the 3.21 kilograms attributed by the PSR didn't meet the requirements of

U.S.S.G. § 1B1.3.  Doc. 277 at 46–47 (PSR ¶¶ 274–81) (supplying supporting arguments about

why 3.21 kilograms was inaccurate); U.S. Sent'g Guidelines Manual § 1B1.3 (U.S. Sent'g

Comm'n 2018) (attributing to defendant acts of others in "jointly undertaken criminal activity"

based on three elements).  The court evaluated and ruled the objections.  *See generally* Doc. 302.

And the court calculated an attributable drug quantity of 2,217.66 grams of heroin.  *Id.* at 51.

That finding resulted in a base offense level of 30.  *Id.*  Including the enhancements, Mr. Bush

faced a guideline range of 210 to 262 months.[4]  U.S. Sent'g Guidelines Manual § 5A (U.S.

Sent'g Comm'n 2018) (Sentencing Table).  Mr. Bush now attests that he told counsel he wanted

to "make the government meet its burden with actual evidence" at sentencing, instead of relying

on proffers that codefendants admitted "were not truthful[.]"  Doc. 402-3 at 3 (Bush Decl. ¶ 10).

Mr. Bush's counsel also requested a downward variance—both orally and on the

papers—based on sentence disparities between Mr. Bush and his codefendants.  *See* Doc. 280 at

5–6 (Sentencing Memorandum requesting "deviation" based on sentence disparities); Doc. 349

---

[4]  The Guidelines math worked out this way:  30 (base offense level) + 2 (firearm enhancement) + 3 (aggravating role enhancement) + 2 (drug premises enhancement) = 37 (offense level).  *See* Doc. 349 at 66–67 (Sent'g Tr. 625:17–626:4).

at 101–02 (Sent'g Tr. 660:22–661:7) ("[I]f the court views [Mr. Bush] as it should, in line with the other defendants who are named in the core conspiracy, . . . . I think a downward variance is appropriate[.]").  The court carefully considered this "substantial" request, but ultimately rejected it because Mr. Bush's codefendants had pleaded guilty and accepted responsibility.  Doc. 349 at 106–07 (Sent'g Tr. 665:10–666:4).

The court sentenced Mr. Bush to 210 months imprisonment with a term of supervised release to follow.  Doc. 303 at 2–3.

### Appeal

Before his appeal, Mr. Bush provided Mr. Arceci a "full draft appellate brief" addressing the drug quantity finding and the aggravating role enhancement.  Doc. 402-3 at 5 (Bush Decl. ¶ 17).  The brief argued the government had failed to provide evidence of drug quantities in response to Mr. Bush's factual objections to the PSR.  *Id.*  Instead of appealing the drug quantity finding and aggravating role enhancements under Fed. R. Crim. P. 32—as Mr. Bush had requested—Mr. Arceci "present[ed] the issues under hearsay."  Doc. 410 at 11–12.  The Circuit rejected Mr. Bush's arguments on appeal and affirmed his sentence.  *Bush*, 2022 WL 13670227, at *9.

With that background, the court now evaluates Mr. Bush's § 2255 motion, beginning with the legal standard.

### III.  Legal Standard

A prisoner in federal custody may move to vacate his sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States[.]"  28 U.S.C. § 2255(a).  The Sixth Amendment provides a person charged with a crime the right to assistance of counsel.  U.S. Const. amend. VI.  While the Sixth Amendment doesn't require

effective assistance explicity, the Supreme Court has explained that "[i]t relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). So, a § 2255 claim will lie where the petitioner shows by a preponderance of the evidence that his counsel provided ineffective assistance. *See United States v. Walters*, 492 F. App'x 900, 903 (10th Cir. 2012) (reciting legal standard for ineffective assistance of counsel).

An ineffective-assistance claim requires petitioner to "show both that his counsel's performance 'fell below an objective standard of reasonableness' and that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687–88). The court may address the prongs in any order because if the petition fails to satisfy either prong, it's fatal to the prisoner's claim. *Id.* (citing *Strickland*, 466 U.S. at 697) (further citation omitted).

The first prong of the *Strickland* standard requires the petitioner to demonstrate counsel's conduct fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The court applies a "strong presumption that 'counsel's conduct falls within'" that range. *Walters*, 492 F. App'x at 903 (quoting *Strickland*, 466 U.S. at 689). "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *United States v. McDonald*, No. 11-10158-EFM, 2013 WL 3867802, at *3 (D. Kan. July 25, 2013) (brackets in original) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)); *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) ("We start with the presumption that absent a showing to the contrary, an attorney's conduct is objectively

reasonable because it could be considered part of a legitimate trial strategy." (quotation cleaned up)).  Defendant thus faces a heavy burden.  *Goode v. Carpenter*, 922 F.3d 1136, 1155 (10th Cir. 2019) ("Overcoming this presumption is a heavy burden for the defendant." (quotation cleaned up)).

*Strickland*'s second requirement—the prejudice prong—requires the petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The defendant must "affirmatively prove prejudice." *Id.* at 693.

## IV.    Analysis

Mr. Bush argues both his trial counsel (Shazzie Naseem) and appellate counsel (John C. Arceci) provided ineffective assistance.  *See generally* Doc. 399.  He challenges counsels' conduct and decisionmaking at trial, sentencing, and on appeal.  *Id.*  The court organizes Mr. Bush's many arguments in the following fashion:

- **Trial Errors** — Trial counsel deficiently acted by focusing trial strategy on proving Mr. Bush's innocence instead of casting doubt on his responsibility for a certain quantity of heroin, Doc. 399 at 8, failing to object to Jury Instruction 15 because it misstates the law, Doc. 402 at 13–14, and failing to object to the prosecutor's closing argument that misstated the presumption of innocence and burden of proof, *id.* at 17–18.

- **Sentencing Errors** — Trial counsel deficiently acted at sentencing by failing to notify the court of its Rule 32 obligations in evaluating Mr. Bush's drug weight, *id.* at 5–7, mistaking his arguments about the aggravating role enhancement (on both the head count and action prongs), *id.* at 4, 8–9, and failing to object to the firearm enhancement, *id.* at 7–8.  Counsel likewise erred by failing to request downward departure based on co-conspirator sentence disparities, pretrial confinement conditions, and the government's charging decisions.  *Id.* at 14–17.

- **Appellate Errors** — Appellate counsel deficiently acted by failing to train aggravating role enhancement and drug quantity arguments on Rule 32.  *Id.* at 9–10.

10

- **Cumulative Effect** — The cumulative effect of trial and sentencing errors caused ineffective assistance and violated Mr. Bush's due process rights. *Id.* at 11–13.

The court takes each argument in turn, starting with Mr. Bush's trial-based arguments.[5]

## A.    Trial Errors

### 1.    General Innocence Defense

Mr. Bush argues counsel ineffectively failed to present a specific defense to Mr. Bush's individual responsibility for more than 100 grams of heroin. Doc. 402 at 12. He suggests his entire purpose for going to trial was to challenge the drug weight, but instead, counsel focused on a general denial defense. *Id.* According to Mr. Bush, had "counsel focused his cross examination of the witnesses on making a showing of reasonable doubt on the individual drug quantity, it's clear the outcome would've been different based on the trial evidence." *Id.* (quotation cleaned up). The government argues that Mr. Bush—to rebut the presumption of reasonableness—"would have to show that there is no way that a reasonable jury could have concluded that he was individually responsible for more than 100 grams of heroin[.]" Doc. 407 at 12–13. And, according to the government, that's a showing Mr. Bush can't make. *Id.* at 13.

---

[5]    At the outset, it's important to clarify one thing. Mr. Bush repeatedly asserts that the government hasn't provided evidence showing *why* counsel made the decisions he did. *See, e.g.*, Doc. 410 at 6 ("Because the court is left with no idea or supporting facts from counsel as to why he decided not to invoke Rule 32 before the Court[,] there is insufficient evidence to deny an evidentiary hearing."). He suggests—in reference to appellate counsel—that "[w]hat a reasonable appellate counsel may have decided to do in this situation has no bearing on why appellate counsel in question chose the strategic path he chose." *Id.* at 11.

But what Mr. Bush's argument misses is that *Strickland* evaluates an objective standard of reasonableness, and the court begins by presuming counsel's efforts *might* have constituted valid strategic efforts. *Bullock*, 297 F.3d at 1046. It's Mr. Bush's burden to overcome that presumption, showing that based on "all the circumstances, counsel's performance fell below an objective standard of reasonableness." *Id.* at 1047 (quotation cleaned up). And while "courts may not indulge post-hoc rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions." *Meadows v. Lind*, 996 F.3d 1067, 1075 (10th Cir. 2021) (quotation cleaned up).

"Whether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong." *Anderson v. Att'y Gen.*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks and citation omitted); Doc. 407 at 12–13 (government arguing counsel's trial strategy was unchallengeable unless completely unreasonable). Thus, Mr. Bush's trial counsel (Mr. Naseem) is entitled to a strong presumption of "adequate assistance" and "reasonable professional judgment." *Strickland*, 466 U.S. at 690. But Mr. Bush asks the court to find counsel's strategy falls "outside the wide range of professionally competent assistance." *Id.*

Mr. Bush never alleges specifically what counsel should've done to change the trial strategy. He argues that his purpose for trying the case was to challenge his attributable drug quantity. Doc. 402 at 12. And he then concludes that the evidence shows he was present for "only 3 of 16 distribution counts" and "a couple other times" at "codefendant's transactions[.]" Doc. 410 at 14. So, Mr. Bush argues, if counsel had attacked the evidence "properly under the element defense, the jury could have found Bush not guilty to being individually responsible for one hundred grams or more based on the trial record." *Id.* at 14–15.

But counsel *did* try to poke holes in the government's drug weight theory at trial. *See* Doc. 343 at 78 (Trial Tr. 1409:5) (urging jury to evaluate "verified evidence"); *id.* at 82 (Trial Tr. 1413:1–2) (emphasizing that "as it relates to George Bush, Jr., we have one verifiable controlled buy"); *id.* at 93 (Trial Tr. 1424:10–14) (explaining just one "hand-to-hand transaction" involving Mr. Bush). Mr. Naseem's closing statement thus suggests at least some effort to undercut Mr. Bush's drug quantity in the eyes of the jury. The jury heard the evidence and decided Mr. Bush was responsible for more than 100 grams of heroin under the standard

articulated in *United States v. Dewberry*.  Doc. 254 at 2 (Jury Verdict); *United States v.*
*Dewberry*, 790 F.3d 1022, 1030 (10th Cir. 2015) ("A defendant can be held accountable for that
drug quantity which was within the scope of the agreement and reasonably foreseeable to him."
(quotation cleaned up)).  Mr. Bush hasn't identified any facts not in evidence—and that his ideal
cross-examination strategy would've revealed—that would change the jury's drug quantity
finding.

And without some information from Mr. Bush about exactly how counsel failed to attack
the government's evidence properly—or what counsel should have done instead—the court can't
conclude counsel's trial strategy was "completely unreasonable[.]"  *Anderson*, 425 F.3d at 859;
*Cummings v. Sirmons*, 506 F.3d 1211, 1229 (10th Cir. 2007) (rejecting ineffective assistance of
counsel claim because petitioner "did not identify which witnesses trial counsel failed to
properly cross-examine, and what impeaching evidence trial counsel should have used in the
cross examination[,]" and thus failed to explain the argument his appellate counsel should've
made); *United States v. Hall*, No. 06-20162-01-KHV, 2015 WL 1034280, at *21 (D. Kan. Mar.
10, 2015) ("Trial strategy includes determining how best to cross-examine witnesses." (first
citing *Pickens v. Gibson*, 206 F.3d 988, 1002 (10th Cir. 2000); and then citing *United States v.*
*Glick*, 710 F.2d 639, 644 (10th Cir. 1983))).  That's true especially where counsel's allegedly
errant strategy—according to Mr. Bush—was to show his innocence.  *See Harrington v. Richter*,
562 U.S. 86, 111 (2011) (explaining it's "difficult to establish ineffective assistance when
counsel's overall performance indicates active and capable advocacy").

"[T]hrough the prism of hindsight, and relying on nothing more than . . . pure
conjecture[,]" Mr. Bush asks the court to conclude his counsel's choice of trial strategy
constituted ineffective assistance.  *Solon v. United States*, No. 11-CV-303-CAB, 2013 WL

12321956, at *24 (D. Wyo. May 24, 2013) (rejecting argument that counsel ineffectively failed to hire more experts while generally describing the testimony he would like to hear, without specifying which experts counsel should've hired to provide such testimony). Mr. Bush has failed to show his counsel's trial strategy was "completely unreasonable." *Meek v. Martin*, 74 F.4th 1223, 1262–63 (10th Cir. 2023) (internal quotation marks and citation omitted). Demonstrating ineffective assistance is a high bar, and Mr. Bush hasn't cleared it based on Mr. Naseem's chosen trial strategy.

## 2.    Jury Instruction 15

Mr. Bush next argues his counsel ineffectively failed to object to Jury Instruction 15. Doc. 402 at 13. The instruction asked the jury to "determine the quantity of heroin attributable" to Mr. Bush, if the jury found "the defendant guilty of the crime charged in Count 1"—the conspiracy. Doc. 253 at 20 (Instruction No. 15). In relevant part, the instruction read:

> An individual defendant may be attributed: (1) quantities of controlled substances with which he was directly involved, so long as those quantities were within the scope of the conspiracy, and (2) quantities of controlled substances with which other coconspirators were directly involved, so long as those quantities were both within the scope of the conspiracy and reasonably foreseeable to the defendant.

*Id.* The instruction proceeded to explain that an "act is 'reasonably foreseeable' if a reasonable person who knew everything that the defendant knew at the time would have been able to know in advance with a fair degree of probability." *Id.*

According to Mr. Bush this instruction "fails to require a key element in an individual's conspiracy"—an agreement to distribute the listed amount of heroin. Doc. 402 at 13 (emphasizing that government must prove agreement to "distribute 100 or more grams of heroin"). Because the instruction misstated the law, Mr. Bush argues, his counsel deficiently failed to object. *Id.* at 14 (citing *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005)). The government disagrees with Mr. Bush's interpretation of the law. In its view, the instruction

stated the law correctly, so any objection would have proved meritless. Doc. 407 at 17. And failing to raise a meritless objection isn't deficient attorney performance. *Id.* (citing *Babcock*, 40 F.4th at 1177). As it turns out, the government has the better argument. Here's why.

Instruction 15 required the jury to find Mr. Bush guilty of a conspiracy *before* making the drug quantity finding. *See* Doc. 253 at 20 (Instruction No. 15). And the conspiracy instruction required the jury to find beyond a reasonable doubt all four conspiracy elements—including an agreement. *Id.* at 15 (Instruction No. 13). So, contrary to Mr. Bush's argument, the jury couldn't convict Mr. Bush "based on nothing more than mere knowledge without actually taking part in an agreement with his coconspirator's actions." Doc. 402 at 14. The jury instruction thus stated the law accurately.

And Mr. Bush's reliance on *Dunmire* doesn't alter this conclusion. In *Dunmire*, a defendant challenged the sufficiency of evidence to support the jury's finding that defendant conspired to distribute more than 50 grams of crack cocaine. *See* 403 F.3d at 723. Our Circuit explained that to "support a conviction of conspiracy[,]" the evidence must allow the jury to find four elements beyond a reasonable doubt. *Id.* at 724. Key to Mr. Bush's argument here is *Dunmire*'s rule that the prosecution "prove, beyond a reasonable doubt, that the alleged conspirator agreed to distribute a certain quantity of drugs." *Id.* at 726 (emphasis omitted). Mr. Bush appears to argue that under *Dunmire*, the instruction should've required the jury to find an *agreement* to distribute the exact quantity of heroin. Instead, Instruction 15 allowed the jury to rely on the quantities of Mr. Bush's coconspirators that were within the scope of the conspiracy and reasonably foreseeable to him. Doc. 402 at 13–14; Doc. 410 at 16.

*Dunmire*—a sufficiency challenge—is distinguishable. In *Dunmire*, the evidence—a single drug transaction involving the defendant—wasn't sufficient to show the defendant

"agree[d] to be involved with all of the [alleged coconspirator's] drug deals."  403 F.3d at 724 n.2.  The Tenth Circuit flatly rejected the notion that a defendant who was "in for a penny" was also "in for a pound[,]" without more evidence of an agreement covering additional drug deals. *Id.*  The Circuit also explained that *Dunmire* was "one of those rare cases where the government failed to present to the jury any additional evidence" allowing the jury to infer "an agreement to implicate Defendant's participation in the other drug transactions."  *Id.*  So, *Dunmire* centered on the prequel to Instruction 15—proving agreement to conspire.  Its sufficiency of the evidence rule is operative in the preliminary finding that the defendant is guilty of the crime of conspiracy. It thus doesn't bear on the subsequent attributable drug quantity rule at issue here.  That is, *Dunmire* doesn't require a more onerous showing that Mr. Bush *expressly* agreed to distribute more than 100 grams of heroin with his coconspirators.

By the time the jury in Mr. Bush's trial evaluated his drug quantity, using Instruction 15, they necessarily had concluded Mr. Bush agreed to violate the federal drug laws.  Doc. 253 at 20 ("*If you find the defendant guilty of the crime of conspiracy* charged in Count 1, you must also determine the quantity of heroin attributable to him[.]" (emphasis added)).  "[O]nce connected to a conspiracy, a defendant 'may be held accountable—for purposes of determining the scope of liability for the conspiracy charge—with the acts or statements of coconspirators.'"  *United States v. Flynn*, No. 16-cr-00056-RJS, 2023 WL 7286583, at \*17 (D. Utah Nov. 3, 2023) (quoting *United States v. Hamilton*, 587 F.3d 1199, 1207–08 (10th Cir. 2009)).  So, *Dunmire* doesn't stand for the proposition Mr. Bush asks it to support.[6]  "*Dunmire* was a case assessing the sufficiency of the evidence to *establish a conspiracy* and is therefore inapplicable to [Mr. Bush's] instructional challenge."  *Id.* at \*18.

---

[6]     The court's research didn't turn up a single case applying this sufficiency-of-the-evidence rule from *Dunmire* to alter the reasonably foreseeable drug quantity instruction, as Mr. Bush requests.

At bottom, a "defendant can be held accountable for that drug quantity which was *within the scope of the agreement* and *reasonably foreseeable* to him." *Dewberry*, 790 F.3d at 1030 (10th Cir. 2015) (emphasis added) (quotation cleaned up). That's exactly what Instruction 15 directed the jury to evaluate. *See* Doc. 253 at 20 (attributing "quantities of controlled substances with which other coconspirators were directly involved, so long as those quantities were both within the scope of the conspiracy and reasonably foreseeable to the defendant"). Because Instruction 15 correctly stated the law, an objection based on a misstatement of law would've proved meritless. And, because such a challenge was meritless, Mr. Bush's trial counsel didn't fail to assert it deficiently. *See Simpson v. Carpenter*, 912 F.3d 542, 600 (10th Cir. 2018) (reviewing on § 2254 motion the conclusions of the state court and explaining that "because the [challenged] instruction was a correct statement of law, trial counsel did not perform deficiently in failing to object to it"). Mr. Bush hasn't established an ineffective assistance claim based on Instruction 15.[7]

---

[7]    While he doesn't reiterate these arguments in any other briefing, Mr. Bush's § 2255 motion also challenges counsel's failure to object to the "individual drug quantity wording" in the instructions and verdict form. Doc. 399 at 8. In Mr. Bush's view, the wording "did not make clear that the individual drug quantity had to be made beyond a reasonable doubt" to convict him "under 841(b)(1)(B)." *Id.*

Although Instruction 15 didn't clarify that the jury needed to find drug quantity beyond a reasonable doubt, the verdict form did. *See* Doc. 253 at 20 (Instruction No. 15); Doc. 254 at 2 (Verdict Form). The special verdict form directed the jury to decide "beyond a reasonable doubt" whether the quantity personally handled by defendant and the quantity handled by others—"within the scope of the conspiracy" and "reasonably foreseeable to the defendant"—was more or less than 100 grams. Doc. 254 at 2 (Verdict Form). Thus, the jury form complied with *United States v. Alleyne*, which requires a jury to find beyond a reasonable doubt any fact that increases a penalty. 570 U.S. 99, 103 (2013). Because the jury was directed to find drug quantity beyond a reasonable doubt in the verdict form—and found that element beyond a reasonable doubt—the court can't conclude counsel's failure to object to its omission from the instructions "fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." *Byrd*, 645 F.3d at 1167 (quotation cleaned up). Mr. Bush's ineffective assistance claim fails on this ground as well.

### 3.    Prosecutor's Closing Argument

Mr. Bush challenges his trial counsel's conduct during closing arguments.  The

prosecutor ended his closing with the following statement:

> Ladies and gentlemen, the presumption of innocence that cloaks this defendant,
> George Bush, Jr., prior to and during the trial no longer cloaks him.  The government
> has proven beyond a reasonable doubt that he committed the eight crimes alleged in
> the superseding indictment.

Doc. 343 at 75–76 (Trial Tr. 1406:24–1407:3).  Comparing this statement to one deemed

improper in *United States v. Starks*, 34 F.4th 1142, 1154–55 (10th Cir. 2022), Mr. Bush asserts

that his counsel should've objected.[8]  Doc. 402 at 17–18.  The government responds, arguing that

Mr. Bush can't show prejudice because (1) the statement doesn't misstate the law, (2) the

statement didn't shift the burden of proof to defendant, (3) the evidence against Mr. Bush was so

overwhelming the jury would've convicted him anyway, (4) juries are presumed to follow their

instructions, and (5) *Starks* is otherwise distinguishable.  Doc. 407 at 21–23.

While the court concludes the prosecutor's statement misstated the law, it agrees with the

government that Mr. Bush wasn't prejudiced.  So, the court evaluates just the prejudice prong of

an ineffective-assistance claim, not the reasonableness prong.  The court explains, first, how the

prosecutor misstated the law.  It then explains why, even with the misstatement of law, Mr. Bush

hasn't shown prejudice.  Ultimately, the court rejects Mr. Bush's ineffective-assistance argument

based on the prosecutor's closing argument.

---

[8]     Mr. Bush also suggests this misstatement shifted the burden of proof to defendant.  Doc. 399 at 9.
The court's not sure how that's so.  The statement doesn't suggest that defendant must prove his
innocence—it reiterates the government's burden to prove the elements of each charged offense.  *See*
Doc. 343 at 75–76 (Trial Tr. 1406:24–1407:3).  And the government also clarified that burden elsewhere
in its closing argument.  *Id.* at 54 (Trial Tr. 1385:1–5) ("[I]t's the government's burden to prove the
defendant guilty beyond a reasonable doubt, and the government has accepted that burden and met that
burden.").  The court thus rejects Mr. Bush's argument that the statement improperly shifted the burden of
proof.

### a.    Misstatement of Law

The government suggests that the prosecutor's comment in this case didn't misstate the law.  Doc. 407 at 20.  Compare the prosecutor's statement above—that the presumption of innocence "no longer cloaks" Mr. Bush—with this improper statement (below) from *Starks*:

> Now, on Monday, if you'll recall, you were instructed that this defendant was presumed innocent.  That he was clothed in the presumption of innocence.  And *that was absolutely true Monday*.  But here we are, on Wednesday.  Ladies and gentlemen, I submit to you that based upon the evidence and based upon your common sense, that *that is no longer true*.  That as the defendant sits before you today, that presumption *has been changed* based upon the substantial weight of credible evidence.  And as you see him, the naked truth about him, this man, based on this evidence, is a drug dealer.

34 F.4th at 1158 (quotation cleaned up) (emphasis in original); *see also Mahorney v. Wallman*, 917 F.2d 469, 471 (10th Cir. 1990) (finding error from prosecutor's statement to jury that the presumption of innocence "no longer exists" because it was "removed by evidence").  The prosecutor in Mr. Bush's trial stated the presumption "no longer cloak[ed]" Mr. Bush and that the government had met its burden.  Doc. 343 at 75–76 (Trial Tr. 1406:24–1407:3).  The government argues that reasonable jurors would've interpreted the statement as suggesting simply that the government had rebutted the presumption of innocence.  Doc. 407 at 20 (distinguishing *Starks* because the prosecutor here didn't communicate "that the presumption no longer applied as a matter of law" but rather that the government had proven its case).  The statements from *Starks* and the prosecutor in this case—as a technical matter—are sisters but not twins.  Nonetheless, their resemblance is uncanny.

In *Starks*, the government had "wisely concede[d]" that the prosecutor's statement misstated the law.  34 F.4th at 1159.  The Circuit's earlier holding in *Mahorney* illuminates why this concession was wise.  *See id.*  In *Mahorney*, the prosecutor's statements had "undermined two fundamental aspects" of the presumption of innocence.  917 F.2d at 471 n.2.  *First*, the

19

presumption "remains with the accused throughout every stage of the trial" including jury deliberations. *Id.* And *second*, the presumption "is extinguished only upon the *jury's* determination that guilt has been established beyond a reasonable doubt." *Id.* (emphasis in original). Just as in *Mahorney*, the prosecutor's statement at Mr. Bush's trial "conveyed to the jury the idea that the presumption had been eliminated from the case prior to deliberations." *See Mahorney*, 917 F.2d at 473. So, the court concludes the prosecutor's statement in closing arguments here misstated the law. All the same, because no prejudice to Mr. Bush follows, Mr. Bush's ineffective-assistance claim still fails.

### b.    Mr. Bush's Failure to Show Prejudice

The Circuit in both *Mahorney* and *Starks* found prejudice—in different procedural postures. Neither case concerned ineffective assistance of counsel claims for failure to object to the statements. *See Mahorney*, 917 F.2d at 470, 473 (evaluating appeal of § 2254 petition challenging Oklahoma felony conviction and concluding the "circumstances . . . show substantial prejudice" to a specific constitutional right and that the error wasn't harmless); *Starks*, 34 F.4th at 1169 (evaluating direct appeal and explaining that "allowing the government's presumption-of-innocence advisement to stand uncorrected had a strong potential for prejudice and did in fact have some prejudicial effects" and that, combined with other errors, affected defendant's substantial rights). But a few key differences here undercut any potential prejudice to Mr. Bush and thus distinguishes his case from these other two. Start with an overview of the Circuit's holdings in *Mahorney* and *Starks*.

In *Mahorney*, the Circuit evaluated whether the prosecutor's misstatements violated defendant's constitutional rights through the "prejudicial effect that the objectionable comments

had on the presumption of innocence[.]"[9]  917 F.2d at 473.  Finding prejudice, the Circuit

emphasized that the judge "immediately and categorically" overruled defense counsel's

objections to the statement in the presence of the jury, exacerbating the statement's prejudicial

effect.  *Id.* at 473.  And the general presumption of innocence instructions didn't rectify that

mistake.  *Id.* at 473–74.  Ultimately, the Circuit concluded the constitutional error wasn't

harmless because the evidence of guilt and innocence were so close.  *Id.* at 474.  "Given the

character and condition of the evidence, the aggravated effect of the prosecution's misconduct

. . . , and the fact that this misconduct went directly to a fundamental precept guiding the

factfinder's evaluation of guilt or innocence, [the Circuit couldn't] say that the constitutional

infirmity in petitioner's criminal trial was harmless."  *Id.*

    Following *Mahorney*'s logic, the Circuit in *Starks* evaluated whether an improper closing

statement prejudiced the defendant.[10]  *Starks*, 34 F.4th at 1160.  It concluded the statement had

some prejudicial effects on the trial.  *Id.*  For starters, the district court's general presumption of

innocence instruction didn't mitigate the strong potential for—and actual—prejudice from the

prosecutor's statement.  *Id.* at 1160–61.  That was so even though defense counsel tried to

correct the mistake in his closing argument.  *Id.* at 1161 n.5 (explaining that defense counsel's

effort to respond to the prosecutor's comment "had little force to diminish the strong potential

for prejudice").  The Circuit also found "unremarkable" the government's argument that "the

jury is presumed to have followed its instructions."  *Id.* at 1162 (quotation cleaned up).  What's

---

[9]      The Circuit didn't provide a specific definition of prejudice.  Concluding the misstatements
prejudiced the presumption of innocence—a specific constitutional right—the Circuit then evaluated
whether the error was harmless.  *Id.* at 474.

[10]     Note that *Starks* also didn't concern ineffective assistance of counsel.  Instead, Mr. Starks
argued—on direct appeal of his conviction—that he was deprived of the right to a fair trial.  *Starks*, 34
F.4th at 1156.  The Circuit used the plain error test to determine whether the facts warranted reversal.  *Id.*
at 1157.

more, the prosecutor made the erroneous statement toward the end of his closing statement, which further exacerbated the timing issues.  *Id.* at 1165.  Finally, key to the actual prejudice was "the lack of strength of the government's case."  *Id.* at 1167 (emphasizing the evidence was "far from overwhelming").  While the Circuit ultimately didn't decide whether the prejudicial effects—standing alone—affected appellant's substantial rights, it concluded the cumulative effect of the prosecutor's erroneous statement and other errors in the case justified vacating his conviction.  *Id.* at 1169.

As it turns out, both cases are distinguishable from this one.  *First*, an aggravating factor present in *Mahorney* is missing here.  *Second*—and more importantly—the state of the evidence in both *Mahorney* and *Starks* meaningfully differed from the state of the evidence here.  Take *Mahorney* first.  There, the Circuit recognized an aggravating effect because the judge "immediately and categorically overruled" counsel's multiple objections in the jury's presence.  917 F.2d at 473.  This placed "official imprimatur" on the prosecutor's misstatements and "amplified their potential prejudicial effect[.]"  *Id.*  Here, counsel didn't object.  And the court didn't emphasize the misstatement of law by overruling such an objection in the jury's presence.  So, one of the key aggravating factors in *Mahorney* wasn't present in Mr. Bush's case.

The most crucial difference here—the one leading the court to conclude Mr. Bush hasn't shown prejudice—is the condition of the trial evidence.  In both *Mahorney* and *Starks*, the Circuit emphasized the misstatements' prejudicial effects in part because the evidence of guilt and innocence was close.  *Mahorney*, 917 F.2d at 474 (emphasizing that jury was "presented with two relatively credible, competing stories . . . , neither of which was conclusively confirmed or disproportionately discredited by extrinsic evidence"); *Starks*, 34 F.4th at 1168 (explaining that jury faced a "close case"—"the evidence regarding his counts of conviction was not

overwhelming"). That's not this case. Mr. Bush effectively admits as much. *See* Doc. 402-3 at 2–3 (Bush Decl. ¶ 8) ("I clearly explained . . . to counsel that trial prep was solely to challenge the drug weight . . . . the purpose of trial was never to argue I didn't commit a crime."). Mr. Bush's statements that he simply wanted to challenge his drug responsibility correctly suggest that the evidence of guilt on the crimes of conviction wasn't close. And he doesn't identify any trial evidence that would undercut that conclusion. So, unlike *Mahorney* and *Starks*, the court can't say the evidence presented to the jury to convict was close. *See Hamilton v. Mullin*, 436 F.3d 1181, 1190 (10th Cir. 2006) (affirming conclusion of harmless error and distinguishing *Mahorney* because "the evidence against [defendant] is substantial"). Nor can the court conclude the evidence establishing the drug quantity was close.

At trial, the jury made a drug quantity finding—which didn't affect Mr. Bush's conviction for the crime of conspiracy, just the application of a mandatory minimum at sentencing. *Alleyne*, 570 U.S. at 103 (requiring jury to find beyond a reasonable doubt any fact that increases a penalty); 21 U.S.C. § 841(b)(1)(B) (establishing mandatory minimum sentence for crime involving 100 or more grams of substance containing heroin). As explained above, the jury's 100-gram finding attributed to Mr. Bush quantities of heroin he handled, along with amounts that his coconspirators handled within the scope of the conspiracy and that were reasonably foreseeable to Mr. Bush. In closing arguments, the prosecutor outlined three ways the jury could conclude—based on the trial evidence—that Mr. Bush was responsible for more than 100 grams of heroin. *See* Doc. 343 at 112–13 (Trial Tr. 1443:5–1444:24) (describing testimony about how each of the following establishes defendant's responsibility for more than 100 grams of heroin: several softball-sized amounts of heroin identified in testimony, $33,000 gambled in a two-month span, and proof of codefendants' sales within the conspiracy). And Mr.

Bush admits elsewhere that it "was understood that the overall scope of the conspiracy would show more than 100 grams." Doc. 402 at 11; Doc. 407 at 21 (government arguing Mr. Bush can't show prejudice based on the prosecutor's statement because he admits the conspiracy involved more than 100 grams). In fact, Mr. Bush criticizes his counsel for failing to focus "his cross examination of the witnesses on making a showing of reasonable doubt on the individual drug quantity[.]" Doc. 402 at 12. So, the jury's drug quantity determination wasn't close, either. Unlike *Mahorney* and *Starks*, Mr. Bush hasn't carried his burden to show prejudice resulted from his counsel's failure to correct the prosecutor's misstatement of the presumption of innocence.

At bottom, the court concludes the prosecutor misstated the presumption of innocence, but it can't conclude Mr. Bush was prejudiced by his counsel's failure to object to that single misstatement of law. Ultimately, Mr. Bush's allegations and the record don't show "a reasonable probability that," had counsel objected, "the factfinder would have had a reasonable doubt respecting [Mr. Bush's] guilt." *Strickland*, 466 U.S. at 695; *see also Miller v. Allbaugh*, No. 15-CV-0703-JED-JFJ, 2019 WL 1434587, at *18 (N.D. Okla. Mar. 29, 2019) (denying § 2254 argument about prosecutor's misstatement by reiterating state court's conclusion that "(1) defense counsel did not object to the remarks, (2) the remarks were isolated, and (3) . . . the jury was clearly and properly instructed regarding the presumption of innocence" (quotation cleaned up)), *certificate of appealability denied* 798 F. App'x 224, 231 (10th Cir. 2020). To find prejudice on counsel's failure to object requires far too much speculation from the court. So, the court concludes Mr. Bush hasn't established his counsel's failure to object prejudiced him.

Mr. Bush thus hasn't established an ineffective assistance of counsel claim for any of the alleged errors at trial. But what about counsel's alleged errors at sentencing?

B.    **Sentencing Errors**

Mr. Bush's ineffective assistance claims about sentencing fall into five categories:  (1) failing to object to drug quantity facts in the PSR; (2) failing to object to the aggravating role enhancement; (3) failing to object to the firearm enhancement; (4) failing to request a downward departure or variance based on sentencing disparities among codefendants; and (5) failing to request a downward departure based on pretrial confinement conditions.  The court takes each argument in turn, below.

1.    **Drug Quantity Objection**

Mr. Bush's sentencing proceedings heavily focused on objections to his attributable drug quantity.  *See* Doc. 302 at 1–2 (Memorandum and Order recounting that sentencing hearings "left unresolved the most challenging issue raised by defendant's objections—the drug quantity determination" and explaining rulings in 59-page order).  Despite his counsel's advocacy at sentencing, Mr. Bush argues Mr. Naseem (his trial counsel) didn't do enough to challenge his drug quantity.  According to Mr. Bush, Mr. Naseem deficiently failed to remind "the Court of its obligations under Rule 32(i)(3)(B)" to resolve disputed facts.  Doc. 402 at 5 (citing Fed. R. Crim. P. 32(i)(3)(B)).  Because of this failure, Mr. Bush argues, the court incorrectly relied on disputed portions of the PSR in determining his drug weight.  *Id.* at 6.  If counsel had objected by citing Rule 32, Mr. Bush suggests his base offense level would've been lower.  Doc. 410 at 6.  The government responds that counsel didn't perform deficiently because he did invoke Rule 32— albeit indirectly.  Doc. 407 at 26.  And, the government argues, Mr. Bush can't show prejudice based on his "generalized and conclusory claim[.]"  *Id.* at 27.

The court evaluates these arguments below.  It first provides a primer on the factfinding obligation under Fed. R. Crim. P. 32(i)(3)(B).  Then, the court evaluates whether Mr. Naseem

provided ineffective assistance by failing to invoke Rule 32(i)(3)(B) clearly at sentencing.

### a.    Rule 32(i)(3)(B) Primer

"At sentencing, the court:  must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]"  Fed. R. Crim. P. 32(i)(3)(B) (quotation cleaned up).  Under Rule 32, "the district court may rely on facts stated in the presentence report unless the defendant has objected to them."  *United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022) (internal quotation marks and citation omitted).  "If a defendant properly objects to a fact in a PSR, 'the government must prove that fact at a sentencing hearing by a preponderance of the evidence.'"  *Id.* (quoting *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014)).  "The government can meet its burden by either presenting new evidence at sentencing or referring to evidence presented at trial."  *Id.*

A "proper[] object[ion]" triggering the factfinding rule is one that "claim[s] that the facts contained in the [PSR] are untrue."  *Id.* at 1096.  Credibility or reliability objections are "insufficient to raise a proper objection and trigger the district court's Rule 32 fact finding obligation."  *Id.*  Also, a "defendant must do more than simply state that he objects to the PSR's bottom line."  *United States v. Barnett*, 828 F.3d 1189, 1192 (10th Cir. 2016).  And to "invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy."  *McDonald*, 43 F.4th at 1096 (quotation cleaned up).  Put simply, "the defendant must assert that the facts alleged in the PSR are false."  *Id.* at 1096 n.3.

>           **b.    Trial Counsel's Arguments at Sentencing Didn't Invoke the
>                   Rule 32 Factfinding Obligation**

There's some confusion about whether Mr. Naseem made objections to the facts relied upon in the PSR's drug quantity calculation. The parties seem to agree that Mr. Naseem—despite the court's earlier ruling—factually objected to drug quantity facts in the PSR. *See* Doc. 402 at 6 (Mr. Bush arguing that he "clearly made factual challenges to the veracity of the PSR"); Doc. 410 at 5 (Mr. Bush arguing the "facts show that counsel objected to the veracity of the information in the PSR while noting that factual testimony from the grand jury and trial proceedings conflicted with the PSR's drug quantity determination"); Doc. 407 at 26–27 (government arguing Mr. Naseem made the requisite factual objections).

Where the parties depart from one another, though, is about what happened next. Mr. Bush argues counsel's failure to cite the Rule 32's factfinding obligation constituted deficient performance. *See* Doc. 410 at 5 (explaining that "although counsel tediously objected[,]" he "never invoked Rule 32(i)(3)(B)"); Doc. 402 at 7 ("The problem is that counsel failed to alert the Court of its duties under Rule 32."). He suggests the court relied on disputed statements in the PSR instead of demanding the government put on evidence to prove those statements. *See* Doc. 410 at 6 ("[T]he Court in its sentencing memorandum ruled in its perspective [that] the PSR was not factually objected to and went on to rely on the PSR as evidence to support its conclusion of the drug quantity issue."). But the government argues that the court evaluated Mr. Naseem's factual objections in detail and satisfied its factfinding obligation already. Doc. 407 at 26–27. So, the government argues, Mr. Naseem's performance wasn't deficient. *Id.*

The court now repeats the conclusion it reached at sentencing—Mr. Naseem didn't make factual objections to drug quantity information in the PSR sufficient to invoke Rule 32's factfinding obligation. *See, e.g.*, Doc. 302 at 9 ("Mr. Bush doesn't object to the factual content

of any of these paragraphs, so the court treats their factual assertions as undisputed." (internal

citation omitted)); *id.* at 14 ("Mr. Bush hasn't objected to the facts recited in any of these

paragraphs.  But Mr. Bush does object to the PSR's attributing Brown's drug sales to Mr. Bush."

(internal citation omitted)).

To be sure, Mr. Naseem asserted a number of drug quantity-based objections on Mr.

Bush's behalf.  *See* Doc. 277 at 42–49 ((PSR ¶¶ 221–94) (outlining defendant's objections to

specific PSR paragraphs); Doc. 280 at 11–12 (Sentencing Memorandum arguing proffered

statements by non-law enforcement witnesses were "untested" and "should be viewed with great

scrutiny and concern"); *see also id.* at 12–13 (arguing live testimony from law enforcement

witnesses didn't show Mr. Bush's culpability was more than 400 grams of heroin).  Many of Mr.

Naseem's objections concerned the declarant's credibility or the conclusion that the quantities

were part of Mr. Bush's jointly undertaken criminal activity.[11]  *See, e.g.*, 302 at 21 (concluding

objections to quantity concerned whether the amounts were attributable to Mr. Bush); *id.* at 24

(concluding objection to specific PSR paragraph concerned hearsay and reliability of

confidential source's proffer).  Recall that credibility objections aren't sufficient to trigger Rule

32(i)(3)(B).  *McDonald*, 43 F.4th at 1096.

And likewise, Mr. Naseem generally objected to the drug quantity attributable to Mr.

Bush by identifying testimony that the whole conspiracy involved 250 to 300 grams of heroin.

---

[11]    For sentencing purposes, the court may attribute to defendant quantities of contraband "with which [the defendant] was directly involved and, in the case of jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *United States v. Lauder*, 409 F.3d 1254, 1267 (10th Cir. 2005) (emphasis omitted). For jointly undertaken criminal activity, the court may hold defendant accountable for acts of others that were "within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity."  U.S. Sent'g Guidelines Manual § 1B1.3 (a)(1)(B) (U.S. Sent'g Comm'n 2018) (quotation cleaned up).  "[T]he accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity."  *See id.*, cmt. 3(B).

Doc. 277 at 47 (PSR ¶ 280). He similarly presented a general drug quantity objection by emphasizing Mr. Bush's presence at just three controlled buys. *Id.* at 46 (PSR ¶ 275). But those aren't objections to specific facts in the PSR—they object to the ultimate conclusion about Mr. Bush's drug weight. *See Barnett*, 828 F.3d at 1192 (objecting to PSR's "bottom line" doesn't invoke Rule 32(i)(3)(B) factfinding obligation); *United States v. Warren*, 737 F.3d 1278, 1285 (10th Cir. 2013) ("Rule 32(i)(3)(B) applies only if facts in the PSR are disputed by specific objection."). So, the court concludes (once again) that Mr. Naseem didn't invoke the court's factfinding obligation under Rule 32(i)(3)(B) for any specific PSR paragraphs relied upon in assessing drug weight.

At bottom, Mr. Bush hasn't carried his burden to show counsel's conduct in failing to object under Rule 32(i)(3)(B) was ineffective. Mr. Bush's sentencing took four sessions, spread across eight months. It resulted in a 59-page Order ruling the numerous drug-quantity objections made by Mr. Bush's counsel. It's "difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111. Mr. Bush hasn't carried his burden to show counsel's conduct was "completely unreasonable, not merely wrong." *Byrd*, 645 F.3d at 1168 (quotation cleaned up). The court rejects his ineffective assistance of counsel argument concerning the calculation of his drug quantity at sentencing.[12]

---

[12]    The court notes that Mr. Bush alleges some facts in an affidavit, suggesting "a lot of the proffers [included in the PSR] were actually not even true" and that "codefendants admitted . . . that they were not truthful[.]" Doc. 402-3 at 3 (Bush Decl. ¶¶ 9, 10). But Mr. Bush doesn't argue that counsel ineffectively failed to object on these bases; he argues that counsel already made factual objections. Doc. 410 at 5 ("The facts show that although counsel tediously objected to nearly every enhancement while pointing to actual facts from the record which conflicted with the PSR's drug quantity finding[,] he never invoked Rule 32(i)(3)(B)."). And, he argues, because counsel didn't remind the court of its Rule 32 factfinding obligation, the court relied on the disputed portions of the PSR. *Id.* at 6 ("[C]ounsel failed to inform the court of its Rule 32 obligations and as a result the Court relied on disputed portions of the PSR as evidence."); Doc. 402-3 at 4 (Bush Decl. ¶ 14) ("Counsel although making factual objections to the veracity of the evidence failed to inform the District Court of its [Rule 32(i)(3)(B)] duty . . . to not use the PSR as evidence prior to ruling on a factual dispute."). So, the court won't opine whether counsel's

### 2.     Aggravating Role Enhancement Objection

Recall that the court applied a three-level aggravating role enhancement based on Mr. Bush's status as a "manager/supervisor of criminal activity involving five or more participants" under U.S.S.G. § 3B1.1(b). Doc. 302 at 58 (revising oral ruling to three-level enhancement under correct Guideline provision). Mr. Bush argues his trial counsel unreasonably failed to object to this enhancement. He argues counsel failed on both enhancement prongs: the head count prong (requiring five or more participants) and the action prong (designating defendant as a manager/supervisor). Doc. 402 at 4, 8–9. The court addresses both enhancement prongs, below, and concludes Mr. Bush has failed to establish his counsel ineffectively failed to object to either prong.

### a.     Head Count Prong

Mr. Bush aptly identifies an error in the court's § 3B1.1(b) ruling. At sentencing, the court orally concluded all defendants pleaded to the conspiracy charge. Doc. 348 at 24 (Sent'g Tr. 470:2–6). And because there were six defendants, including Mr. Bush, the criminal activity involved more than five participants. *Id.* Mr. Bush points out that just three defendants pleaded to the conspiracy—Albert Brown, Maurice Bluett, and Isaiah Lewis. Doc. 402 at 4 (identifying all defendants but explaining that Markelo Paden and Benjamin Mims didn't plead to conspiracy). So, under Mr. Bush's math, the head count prong wasn't satisfied because there were just four participants: himself and the three defendants that pleaded to the conspiracy. *See* Doc. 402 at 4; Doc. 410 at 8.

But for the head count prong of § 3B1.1 to apply, the "participants" in the criminal activity needn't qualify as convicted members of a conspiracy. The Sentencing Guidelines

---

failure to raise Mr. Bush's alleged facts at sentencing constituted ineffective assistance of counsel—Mr. Bush doesn't make that argument.

Manual clarifies that a "participant" is one "who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S. Sent'g Guidelines Manual § 3B1.1, cmt. 1 (U.S. Sent'g Comm'n 2018).  And the court determines the defendant's role based on "'all conduct within the scope of § 1B1.3 (Relevant Conduct), . . . and not solely on the basis of elements and acts cited in the count of conviction.'"  *United States v. VanMeter*, 278 F.3d 1156, 1166 (10th Cir. 2002) (quoting U.S. Sent'g Guidelines Manual § 3B, intro. cmt. (U.S. Sent'g Comm'n 2000)) (ellipsis in original) (emphasis omitted).  So, the court is to "consider all relevant conduct under U.S.S.G. § 1B1.3 in determining the application of a U.S.S.G. § 3B1.1 aggravating role adjustment."  *Id.* (rejecting defendant's argument that a third party wasn't a "participant" because he wasn't responsible for committing the underlying offense).  "Once a defendant's relevant conduct for sentencing purposes is determined, the same relevant conduct is used not only in determining the defendant's base offense level but also for any role in the offense adjustments."  *United States v. Harris*, 148 F. App'x 690, 693–94 (10th Cir. 2005) (explaining rule in challenge to "participants" under U.S.S.G. § 3B1.2).  Where that conduct "involved a jointly undertaken criminal activity—such as here, a conspiracy case—a sentencing court's assessment of a defendant's role in the offense may involve in certain instances consideration of the conduct of uncharged coconspirators[.]"  *United States v. Nkome*, 987 F.3d 1262, 1269–70 (10th Cir. 2021) (quotation cleaned up) (referencing § 1B1.3 in § 3B1.2 mitigating role argument).

Mr. Bush can't show his counsel was deficient in failing to object to the court's misstatement that all of Mr. Bush's codefendants pleaded to the conspiracy.  Someone can qualify as a "participant" for the head count prong of § 3B1.1(b) without a conspiracy conviction.  So, any argument that the head count prong wasn't satisfied solely on the didn't-

31

plead-to-conspiracy basis is meritless. And "if an argument is meritless, it is likely that the failure to raise it was not deficient performance." *Babcock*, 40 F.4th at 1177.

Mr. Bush also can't show prejudice, because the court didn't conclude the guilty plea codefendants were the only "participants." At the sentencing hearing, the court explained that its focus on the codefendants who pleaded to the conspiracy said "nothing of the other participants in the criminal offense. They include James Castel and Rodney Bush." Doc. 348 at 24 (Sent'g Tr. 470:2–11) (finding head count prong "easily satisfied" because of guilty pleas and the other two nondefendant "participants"). Assume for the sake of argument that Mr. Mims and Mr. Paden didn't qualify as "participants," just as Mr. Bush suggests. Doc. 410 at 8 (defendant asserting he could "supply sworn testimony that Mims and Paden's PSR and final sentence do not support the finding that they were part of the same relevant conduct as Bush"). Even in that counterfactual world, the number of participants still adds up to five or more: George Bush, Albert Brown (pleaded), Isaiah Lewis (pleaded), Maurice Bluett (pleaded), James Castel ("participant"), and Rodney Bush ("participant"). To sum up, despite Mr. Bush's claims that he could show Mr. Mims and Mr. Paden weren't part of his relevant conduct, Mr. Bush hasn't alleged any facts to support that notion. And even if he had, he hasn't suggested any reason why the court's head count conclusion would've differed. So, trial counsel's failure to object to the court's mistaken statement about which codefendants pleaded to the conspiracy doesn't establish ineffective assistance of counsel.

Mr. Bush can't show either prong of an ineffective assistance of counsel claim for his argument about the § 3B1.1(b) aggravating role enhancement's head count prong. But what about the action prong?

###### b.    Action Prong

The action prong defines Mr. Bush's role in the criminal activity—either as a leader/organizer or manager/supervisor. *See* U.S. Sent'g Guidelines Manual § 3B1.1(a), (b) (U.S. Sent'g Comm'n 2018). To distinguish between leader/organizers and manager/supervisors for the § 3B1.1(b) enhancement, the court considers the following factors: (1) exercise of decision making authority; (2) nature of participation in committing the offense; (3) recruitment of accomplices; (4) claimed right to a larger share of the crime's fruits; (5) degree of participation in planning or organizing; (6) nature and scope of illegal activity; and (7) the degree of control and authority exercised over others. U.S. Sent'g Guidelines Manual § 3B1.1, cmt. 4 (U.S. Sent'g Comm'n 2018). Mr. Naseem objected to the PSR's aggravating role enhancement, arguing "no evidence produced at trial . . . demonstrates that any of these factors were present[.]" Doc. 277 at 48 (PSR ¶ 288). At the hearing, the court applied the factors to Mr. Bush. Doc. 348 at 24–29 (Sent'g Tr. 470:12–475:16). Mr. Naseem then argued against the aggravating role enhancement and asked the court to reconsider its conclusion. *Id.* at 29–32 (Sent'g Tr. 475:22–478:5).

On the action prong, Mr. Bush revives his familiar Rule 32(i)(3)(b) argument. He argues that counsel "objected to the factual inaccuracies from the PSR" about Mr. Bush's aggravating role. Doc. 402 at 8. He recalls that counsel "explain[ed] none of the factors were presented at trial." *Id.* He suggests that if counsel had "properly invoked Rule 32 by name the Government would have been mandated to refresh the court with the evidence from trial or other sources[.]" Doc. 410 at 9. And Mr. Bush says that at an evidentiary hearing, he "will present testimony or statements of facts which will conflict with the inferences which resulted from the PSR's unsworn investigative reports" and "the Court's recollection of the trial." *Id.*

But regardless whether counsel presented specific factual objections to the PSR, the court satisfied its factfinding obligation.  In concluding that the aggravating role enhancement applied, the court evaluated the evidence supporting the factors, including both Mr. Naseem's and the prosecutor's interpretation of the evidence and PSR.  Doc. 348 at 24–28 (Sent'g Tr. 470:12–474:13); *id.* at 29–33 (475:22–479:9) (defendant's motion to reconsider and court's ruling); *id.* at 37–38 (483:7–484:18) (government's argument and court's clarification); Doc. 302 at 2, 57–58 (court revising oral ruling on aggravating role enhancement); *McDonald*, 43 F.4th at 1095 ("The government can meet its [Rule 32(i)(3)(B)] burden by either presenting new evidence at sentencing or referring to evidence presented at trial.").  The court made factual findings supporting the § 3B1.1 enhancement.  *United States v. Marquez*, 833 F.3d 1217, 1221 (10th Cir. 2016) ("A district court must make specific findings and advance a factual basis to support an enhancement under U.S.S.G. § 3B1.1." (quotation cleaned up)); *see also Bush*, 2022 WL 13670227, at *6–7 (affirming court's application of role enhancement to Mr. Bush and recounting the court's factual findings at sentencing, rejecting Mr. Bush's argument that court used incorrect legal standard and inadequately explained the basis for the enhancement).  So, the court ruled already objections matching Mr. Bush's argument, even though counsel didn't reference Rule 32 explicitly.

Mr. Bush seems to argue that citing Rule 32 explicitly would've required the government to put on more evidence, and counsel deficiently failed to cite the rule specifically.  But Mr. Bush never alleges any facts that could refute the factual findings the court made.  *See* Doc. 407 at 34 (government arguing that Mr. Bush fails to "specify or describe any evidence this Court could have disregarded (that would've changed the result) or what evidence could have been provided (that would've change the result).").  Mr. Bush—once again—seems to dispute the

court's interpretation of and conclusions from the evidence, not the evidence's accuracy. *See* Doc. 402 at 8 (recounting counsel's argument that the trial testimony showed Brown was the leader and everyone else was "closer to independent contractors"); Doc. 410 at 10 ("The findings at sentencing were made based on the Court's recollection and not based on evidence presented by the Government."). And he alleges that the court relied on disputed portions of the PSR without evidence—but he doesn't identify those purportedly disputed portions specifically. *See* Doc. 402 at 8–9; Doc. 410 at 9. And he doesn't allege how those unknown portions are untrue. The court can't conclude Mr. Bush's trial counsel deficiently failed to object under Rule 32— Mr. Bush hasn't identified which facts counsel should've objected to as untrue regarding the aggravating role enhancement.

And in any case, Mr. Bush's allegations don't establish prejudice affirmatively. *See Strickland*, 466 U.S. at 693. He doesn't allege any facts that would contradict any evidence or change the court's conclusion in applying the role enhancement. His briefs don't establish a likelihood that the court would've reached a different conclusion about his role, had counsel specifically invoked Rule 32(i)(3)(B).

Once again, Mr. Bush hasn't established ineffective assistance of counsel.

### 3.    Firearm Enhancement Objection

The court increased Mr. Bush's base offense level by 2 levels because a firearm was present. *See* U.S. Sent'g Guidelines Manual § 2D1.1(b)(1) (U.S. Sent'g Comm'n 2018) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). Mr. Bush suggests that the PSR—which recommended the enhancement—was factually inaccurate

because the jury acquitted Mr. Bush of a firearm-related offense under 18 U.S.C. § 924(c).[13]
Doc. 402 at 7–8. And he emphasizes counsel's objection to the PSR on this basis at sentencing.
*Id.* He notes that counsel "reminded" the court that Mr. Bush could lawfully possess a firearm
and that there "was no evidence at trial of a firearm being connected to Mr. Bush's role in the
conspiracy." *Id.* But still, he suggests counsel's "failure to invoke Rule 32 was ineffective and
prejudicial[.]" *Id.* at 8. Had counsel "invoked the Rule by name[,]" the government would've
needed to present "factual evidence to support the PSR's conclusion that the enhancement
applied." Doc. 410 at 7.

The firearm enhancement applies "if the weapon was present, unless it is clearly
improbable that the weapon was connected with the offense." U.S. Sent'g Guidelines Manual
§ 2D1.1(b)(1), cmt. 11(A) (U.S. Sent'g Comm'n 2018). The government "bears the initial
burden of proving possession of the weapon[,]" satisfied by demonstrating "a temporal and
spatial relation existed between the weapon, the drug trafficking activity, and the defendant."
*United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005) (quotation cleaned up). Once it
meets that burden, "the burden shifts to the defendant to show that it is clearly improbable the
weapon was connected with the offense." *Id.* at 1238 (quotation cleaned up).

Counsel objected—three times—to the enhancement. Doc. 277 at 47–48 (PSR ¶ 283)
(defendant's objection to PSR); Doc. 280 at 17 (Sentencing Memorandum asking court to review
the trial evidence, emphasizing absence of connection between Mr. Bush and "weapon possessed
in furtherance of a drug trafficking offense"); Doc. 348 at 13–15 (Sent'g Tr. 459:25–461:12)
(oral motion for court to reconsider its ruling on the firearm enhancement by referencing the trial

---

[13]    The court notes some possible confusion in the briefs. Mr. Bush incorrectly assumes the court
applied an enhancement based on a deleted provision of the Sentencing Guidelines Manual—U.S.S.G.
§ 2K2.2. Doc. 402 at 7; Doc. 410 at 7.

evidence). But Mr. Bush argues that if counsel had "invoked the Rule by name, the Government would have to present its own evidence to support the enhancement." Doc. 410 at 7. Here's the problem with Mr. Bush's argument: the government did present "its own evidence." And the court evaluated the evidence in ruling the objection. Doc. 348 at 10–13 (Sent'g Tr. 456:23–459:21) (court's oral ruling on firearm enhancement, concluding it applied because the evidence didn't make it clearly improbable that the weapon was connected to the drug offenses). In short, counsel objected but his attempt to show the firearm connection was clearly improbable fell short. Just because counsel's efforts failed, doesn't make the conduct deficient automatically.[14] *Cf. United States v. Wesley*, No. 07-20168-02-JWL, 2013 WL 2285102, at *3, *4 (D. Kan. May 22, 2013) (collecting cases to explain that "the mere fact that counsel's arguments are unsuccessful does not render counsel's performance constitutionally deficient" and rejecting ineffective assistance claim when counsel failed to convince the court that the firearm enhancement didn't apply). Mr. Bush hasn't shown that his trial counsel's failure to cite Rule 32 by name fell below an objective standard of reasonableness. Mr. Bush thus fails to establish ineffective assistance surrounding the § 2D1.1(b)(1) firearm enhancement.

---

[14]    Mr. Bush now attests that he "explained to counsel that the evidence will show [his] guns were legal and were never used by [him] for any type of drug trade[.]" Doc. 402-3 at 3 (Bush Decl. ¶ 9). That's because "the people [he] dealt with are longtime friends." *Id.* He attests that the "firearms were for [his] own protection living in the dangerous inner Kansas City." *Id.* But Mr. Bush never argues that counsel deficiently failed to present these facts. He just argues that counsel should've invoked Rule 32 to require the government to present more evidence. *See* Doc. 402 at 7–8; Doc. 410 at 7.

While the court liberally construes Mr. Bush's briefing, it can't function as his advocate. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). So, the court won't opine about these facts and whether they would've changed the court's analysis of the firearm enhancement or whether counsel deficiently failed to assert them.

4.      **Request for Downward Departure or Variance Based on Sentence Disparities and Government's Plea Tactics**

Mr. Bush next challenges counsel's alleged failure to request a downward departure or variance based on sentencing disparities among the codefendants. Doc. 402 at 14–15. He focuses his argument on disparities in the government's plea-bargaining tactics, which led to Mr. Bush's codefendants accepting responsibility for their offenses and receiving lower sentences. *See id.* at 15 ("This disparity was based solely on the fact that the government did not want to offer Mr. Bush a deal in which he could be held accountable for his conduct as it did with all the other defendants in the case."); Doc. 410 at 17 ("Counsel went on to explain the disparity between codefendants, but counsel never asked the Court to depart based on the argument of the government driving the reason for trial and the disparity.").

As the government emphasizes, Mr. Bush's trial counsel (Mr. Naseem) requested a downward *variance* based on sentence disparities. *See* Doc. 407 at 38–39. And Mr. Naseem did so multiple times—both in his Sentencing Memorandum and at the sentencing hearing. *See* Doc. 280 at 5–6 (Sentencing Memorandum explaining disparities between Mr. Bush's potential guideline range and the sentences imposed on his codefendants, arguing "a deviation may be appropriate"); *id.* at 7 (describing why Mr. Bush "feels he was forced to proceed to trial" based on government's plea offers); Doc. 349 at 101–02 (Sent'g Tr. 660:22–661:7) ("[I]f the court views [Mr. Bush] as it should, in line with the other defendants who are named in the core conspiracy, . . . . I think a downward variance is appropriate[.]"); *id.* at 100–01 (Sent'g Tr. 659:22–660:21) (arguing in sentencing disparity discussion that "challenging evidence at trial and holding the government's feet to the fire" isn't "identical to not accepting responsibility" and that Mr. Bush shouldn't suffer a sentencing penalty for going to trial). Mr. Bush even admits that counsel "present[ed] an elegant argument on this issue in his memorandum[.]" Doc. 402 at

15. But he suggests that counsel should have made "an actual request for a downward *departure*[.]" *Id.* (emphasis added).

To Mr. Bush's credit, the terms "downward departure" and "downward variance" aren't synonyms. A "downward departure is based on a specific guideline provision[.]" *United States v. DeRusse*, 859 F.3d 1232, 1237 (10th Cir. 2017). But "a downward variance is based simply on the district court's discretionary authority to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant' in selecting 'a sentence sufficient, but not greater than necessary,' to comply with all of the purposes of sentencing." *Id.* (quoting 18 U.S.C. § 3553(a)).

Mr. Bush hasn't shown Mr. Naseem deficiently failed to request a downward variance or downward departure on this basis. Mr. Naseem plainly requested a downward variance. Doc. 280 at 4–6; Doc. 349 at 101–02 (Sent'g Tr. 660:15–661:17). The court considered that request, noting that the disparity was "the most substantial argument Mr. Bush made[.]" Doc. 349 at 106 (Sent'g Tr. 665:10–12). But the court hypothesized about a situation where Mr. Bush's most similar codefendant had gone to trial. *Id.* at 106–07 (Sent'g Tr. 665:19–666:4). That codefendant could've ended up with a range of 188 to 235 months. *Id.* And the court emphasized that the 210-month sentence imposed on Mr. Bush was "the middle of that [hypothetical] guideline range[.]" *Id.* The court evaluated Mr. Bush's downward variance argument and rejected it. And in his briefing, Mr. Bush simply suggests that if counsel had made "an actual request for a downward departure[,]" the court would've "exercised its discretion based on the unusual disparity . . . caused by the government's plea tactics[.]" Doc. 402 at 15. But Mr. Bush hasn't shown that counsel performed deficiently in failing to request a downward *departure*, instead of just a downward *variance*. *See Hall*, 2015 WL 1034280, at *15 (requiring

defendant to "allege[] specific facts which would establish that counsel's performance was deficient").  Thus, Mr. Bush hasn't established the first ineffective assistance prong.

He likewise hasn't established the second prong—prejudice.  Mr. Bush doesn't suggest a substantial likelihood that the court would've departed downward based on sentence disparities had his counsel used the word "departure" instead of "variance."  And it's of no matter that the government didn't offer Mr. Bush as good of a plea deal as his codefendants—that's up to the prosecutor's discretion.  *Cf. United States v. Rodriguez*, 63 F. App'x 458, 460 (10th Cir. 2003) (concluding defendant had shown no basis for downward departure where sentence was "consistent with the sentencing guidelines and statutory requirements" and "different sentences appear[ed] to be linked to differences in the manner in which each defendant was convicted (i.e., through a guilty plea or after a jury trial), the different convictions . . . , and the other individual differences[.]"); *United States v. Bridges*, 68 F. App'x 896, 899 n.1 (10th Cir. 2003) (explaining on § 2255 motion that "sentencing disparities resulting from different plea agreements by co-defendants are a legitimate exercise of prosecutorial discretion").  The court evaluated the sentencing disparity in rejecting counsel's downward variance argument.  And Mr. Bush hasn't suggested in anything but conclusory fashion why the court's ruling would change had his trial counsel requested a downward departure.

At bottom, Mr. Bush hasn't established counsel ineffectively failed to request a downward variance or downward departure, or that such conduct prejudiced him.  But Mr. Bush argues counsel ineffectively failed to request downward departure on another ground, evaluated next.

**5.      Request for Downward Departure Based on Pretrial Confinement Conditions**

Mr. Bush also suggests that counsel deficiently failed to request a downward departure based on his conditions of pretrial confinement at the CCA's facility in Leavenworth, Kansas. Doc. 402 at 15.  He concludes the conditions at CCA violated his "right to be safely housed during pretrial[.]"  *Id.*  Mr. Bush suggests violent conditions, poor management, and eavesdropping on privileged conversations.  *Id.*  He identifies "highly respected" individuals who have condemned the conditions at CCA publicly.  *Id.* at 16.  According to Mr. Bush, his trial counsel knew about these issues.  *Id.*  He had "brought to the counsel's attention" that he was deprived of access to legal materials and the court while confined at CCA.  *Id.*  Mr. Bush concludes these conditions "clearly . . . would deserve consideration for downward departure." *Id.* at 17.  And because counsel "failed to present" the issue, "the Court was never able to consider whether relief under the guidelines downward departure was warranted."  *Id.*

Mr. Bush is correct on one thing:  Mr. Naseem never presented a request for downward departure based on Mr. Bush's pretrial confinement conditions.  The government suggests this was a reasonable strategy because pretrial confinement conditions don't bear on the factors ordinarily considered at sentencing.  Doc. 407 at 42 (citing 18 U.S.C. § 3553(a)).  But to Mr. Bush's credit, there are "essentially no limit[s] on the number of potential factors that may warrant a departure." *Koon v. United States*, 518 U.S. 81, 106 (1996) (quotation cleaned up). And the court may depart where the case is "unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.* at 92.  But "bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." *Id.* at 95–96 (quotation cleaned up); *see also* U.S. Sent'g Guidelines Manual § 1A1.4(b) (U.S. Sent'g Comm'n 2018) (similar).

The court didn't locate any Tenth Circuit authority unequivocally establishing pretrial confinement conditions as a ground for downward departure.  Our court has implied that perhaps such a departure is possible.  *United States v. Anderson*, No. 19-20081-01-DDC, 2023 WL 3002446, at *1, *4 (D. Kan. Apr. 19, 2023) (declining to evaluate whether presentence confinement conditions were grounds for downward departure because time for requesting departure had passed and explaining "the court would consider presentencing confinement conditions—if at all—during the sentencing phase"); *United States v. Hawley*, No. 19-CR-40020-HLT, 2019 WL 5395736, at *2 (D. Kan. Oct. 21, 2019) (finding criminal defendant wasn't "precluded from arguing that his conditions of confinement at CoreCivic should be considered during his [upcoming] sentencing" and that "[s]ome courts" recognize confinement conditions sometimes are grounds for downward departure).

So, Mr. Naseem could've made the argument that Mr. Bush's pretrial confinement conditions justified a downward departure.  And Mr. Bush alleges facts about what he faced at CCA personally.  *See* Doc. 402 at 15–16 (alleging poor and violent conditions, poor management, eavesdropping on privileged communications, cells that don't lock, deprivation of access to legal material and the courts); Doc. 410 at 18 (alleging counsel knew about the harsh conditions at CCA).  But given the fact intensive nature of applying such a factor and that departures of this sort are "highly infrequent[,]" *Koon*, 518 U.S. at 96, the court can't conclude it was "completely unreasonable" for counsel to fail to seek a downward departure on this basis, *Byrd*, 645 F.3d at 1168 (quotation cleaned up); *see also Andujar v. United States*, No. 05-cr-00422, 2009 WL 2169163, at *4 (M.D. Pa. July 16, 2009) (recognizing it wasn't "settled law" that "exceptionally bad conditions of pretrial or presentencing confinement are a basis for a downward departure" and there was a "low probability that such a motion would have been

beneficial to" defendant, so the court couldn't say "defense counsel was unreasonable for failing to raise" departure argument); *United States v. Ortiz*, 6 F. App'x 46, 48 (1st Cir. 2001) (rejecting ineffective assistance of counsel based § 2255 motion in part because there was "no clear consensus" about "the propriety of granting a downward departure for conditions of pretrial confinement" (quotation cleaned up)).

In any case, Mr. Bush never provides a basis for prejudice. He simply concludes that if counsel had made the downward departure argument, the court would've taken these conditions into consideration. Doc. 402 at 17. But he fails to prove affirmatively that the court's sentencing decision would've differed, thereby prejudicing him. Mr. Bush hasn't established that the court would have departed from the sentencing guideline, had it considered Mr. Bush's pretrial confinement conditions. *See Strickland*, 466 U.S. at 694 (defendant must show "reasonable probability that . . . the result of the proceeding would have been different").

In sum, Mr. Bush has failed to establish ineffective assistance of counsel based on Mr. Naseem's failure to request a downward departure based on pretrial confinement conditions. And that wraps up Mr. Bush's allegations about his trial counsel's ineffective assistance. The court turns next to Mr. Bush's next attorney, who represented him on appeal.

### C.    Appellate Errors

On appeal, Mr. Bush's counsel—John C. Arceci—challenged the court's drug quantity calculation and aggravating role enhancement. *See Bush*, 2022 WL 13670227, at *1 (outlining Mr. Bush's arguments on appeal). But Mr. Bush argues his appellate counsel didn't appeal those court findings in a correct manner. *See* Doc. 399 at 7 (explaining Mr. Arceci "decided to appeal the two issues arguing the district court used an unlawful legal standard [for the aggravating role enhancement] and the drug quantity was based on unlawful hearsay"). He argues that Mr.

43

Arceci should've challenged the drug quantity and aggravating role enhancement based on the court's failure to resolve fact-based arguments under Rule 32(i)(3)(B). Doc. 399 at 7 ("A review of the record shows counsel was ineffective for not addressing the sentencing defects under Rule 32(i)(3)(B)."); Doc. 402 at 9–10 ("Mr. Bush showed appellate counsel how Mr. Naseem did object factually to the PSR. . . . [T]he district court expressly relied on the disputed PSR[.]"). And Mr. Bush alleges he gave Mr. Arceci a completed brief addressing the issues under Rule 32. Doc. 402 at 9. Mr. Bush thus concludes "prejudice resulted." *Id.* at 10. He implies that the result of his appeal would've changed had appellate counsel argued Rule 32—the Circuit would've concluded his guideline range should've started lower. *Id.*

"When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, [courts] look to the merits of the omitted issue." *Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006) (quotation cleaned up); *United States v. McKye*, 737 F. App'x 386, 390 (10th Cir. 2018) (same). "'[A]ppellate counsel who file[s] a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Appellate "counsel engage in a process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Scott v. Mullin*, 303 F.3d 1222, 1230 n.4 (10th Cir. 2002). That's the "hallmark of effective advocacy[.]" *Id.* (internal quotation marks and citation omitted); *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (similar). By presenting arguments selectively, appellate counsel direct judges' attention "to the stronger issues" and maintain their "credibility before the court." *Scott*, 303 F.3d at 1230 n.4 (internal quotation marks and citation omitted).

"If the omitted issue is so plainly meritorious that it would have been unreasonable to

winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Malicoat*, 426 F.3d at 1249 (quotation cleaned up). But "if the omitted issue has merit but is not so compelling, [the court] must examine the issue in relation to the rest of the appeal." *Id.* (internal quotation marks and citation omitted). If an "issue is meritless, its omission will not constitute deficient performance." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). So, were Mr. Bush's purported Rule 32(i)(3)(B) arguments plainly meritorious, meritless, or somewhere in the middle?

The court concludes both arguments would have lacked merit had Mr. Arceci asserted them on appeal. As established above, Mr. Bush didn't present fact-based objections under Rule 32(i)(3)(B) to the attributable drug quantity at sentencing. *See above* § IV.B.1.b. So, the court could rely on the underlying facts from the PSR as evidence. *See McDonald*, 43 F.4th at 1095. On appeal, an argument that the court didn't satisfy its obligations based on a factual Rule 32 objection would've proved meritless. And if an argument "'is meritless, its omission will not constitute deficient performance.'" *Hammon*, 466 F.3d at 928 (quoting *Cargle*, 317 F.3d at 1202). The court can't say that Mr. Arceci's choice—to present a hearsay argument, not Mr. Bush's Rule 32 argument—was ineffective on appeal.

Likewise, Mr. Bush argues Mr. Arceci should've appealed the aggravating role enhancement based on Rule 32(i)(3)(B), asserting that the court relied on disputed portions of the PSR. Doc. 402 at 9–10; Doc. 410 at 10–12. But, as the court already has explained, the court satisfied its factfinding obligation when it applied the aggravating role enhancement at sentencing by evaluating the evidence. *See above* § IV.B.2.b. And, to the extent Mr. Bush believes the court relied on disputed facts from the PSR in reaching this conclusion, Mr. Bush hasn't identified specifically those facts that he disputes. *See above* § IV.B.2.b. Although Mr.

Bush disputes the court's interpretation of the trial evidence, he doesn't allege that any *specific* findings of fact were based on false information. Because the court already evaluated the evidence and concluded Mr. Bush qualified for the enhancement, and Mr. Bush doesn't allege any facts conflicting with that evidence, he hasn't shown a Rule 32(i)(3)(B) challenge would've proved successful on appeal. Based on Mr. Bush's allegations, an appeal on this basis would've proved meritless. So, appellate counsel wasn't deficient. *See United States v. Walters*, 163 F. App'x 674, 678 (10th Cir. 2006) ("Omission of a meritless issue does not constitute deficient performance." (quotation cleaned up)).

### D.    Cumulative Effect Argument

As a last-ditch effort, Mr. Bush argues the various alleged errors—at trial and sentencing—have a cumulative effect that violated his right to a fair trial and themselves constituted ineffective assistance of counsel. Doc. 402 at 11–13; Doc. 410 at 12–13. Mr. Bush emphasizes that the government didn't respond to this argument. Doc. 410 at 12–13.

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively" they are no longer harmless. *Cargle*, 317 F.3d at 1206 (internal quotation marks and citation omitted). If there's no finding of error, the court needn't conduct a cumulative error analysis. *Smith v. Jones*, 226 F. App'x 814, 816 (10th Cir. 2007) ("This analysis does not apply to the cumulative effect of non-errors." (quotation cleaned up)).

The court identified just one *possible* error in counsel's conduct. Recall that the court resolved on the prejudice prong Mr. Bush's argument that counsel deficiently failed to object to the prosecutor's misstatement of the presumption of innocence. *See above* § IV.A.3.b. So, the court must include that argument in its cumulative error analysis, even though it didn't address

whether counsel was ineffective on that point.  *See United States v. Fields*, 949 F.3d 1240, 1273 (10th Cir. 2019) (directing district court to include in cumulative error analysis those ineffective assistance of counsel claims resolved on prejudice prong of *Strickland* test).  But, because the court identified just one possible error, there's nothing to accumulate.  *See Castro v. Ward*, 138 F.3d 810, 832–33 (10th Cir. 1998) ("Cumulative-error analysis applies where there are two or more actual errors.  It does not apply, however, to the cumulative effect of non-errors." (quotation cleaned up)).  The court thus rejects Mr. Bush's cumulative-error arguments.

## V.    Evidentiary Hearing

The court must "grant a prompt hearing" unless "the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  As our Circuit has explained, "[t]he decision not to hold an evidentiary hearing is essentially the equivalent of a dismissal for a failure to state a claim or a summary judgment, because the district court has concluded that the record does not entitle the prisoner to relief[.]" *United States v. Ciocchetti*, 480 F. App'x 912, 914 (10th Cir. 2012) (quoting *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009)).  That's so because "either the prisoner has failed to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations."  *Id.* (quotation cleaned up).

To justify an evidentiary hearing, a petition must meet a standard "higher than notice pleading."  *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).  District courts aren't "required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *Id.*; *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (same).  And "[a]n evidentiary hearing is not necessary where the factual allegations are contradicted by the record, are inherently incredible, or when

they are conclusions rather than statements of fact." *United States v. Perez-Madrigal*, No. 16-20044-JAR-1, 2021 WL 1166108, at *2 (D. Kan. Mar. 26, 2021).

Mr. Bush maintains that his allegations, if proven true, entitle him to relief. *See* Doc. 410 at 4, 19. And he argues those "allegations are non-conclusory[.]" Doc. 402 at 18. So, he seeks an evidentiary hearing. *Id.* But, as established throughout this Order, Mr. Bush's claims of ineffective assistance of counsel are supported, at best, by limited and conclusory factual allegations, and the record refutes his ineffective assistance arguments. So, Mr. Bush's factual allegations and the files and record conclusively show Mr. Bush is not entitled to relief based on ineffective assistance of counsel. *See Hall*, 2015 WL 1034280, at *25 ("The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required."); *Foltz v. Wyo. Dep't of Corr. Medium Corr. Inst. Warden*, 860 F. App'x 597, 603 (10th Cir. 2021) ("Given [petitioner's] failure to identify any specific facts to be proven, the district court did not abuse its discretion in denying the request for an evidentiary hearing.").

## VI.    Certificate of Appealability

Finally, Rule 11 of the Rules Governing Section 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse" to the petitioner. A court may grant a certificate of appealability (COA) only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation cleaned up).

48

Mr. Bush asserts both his trial counsel (Shazzie Naseem) and appellate counsel (John C. Arceci) provided ineffective assistance of counsel. His ineffective assistance claims are divided into nine parts. He also alleges the cumulative errors violated his right to a fair trial. "If the court issues a [COA], the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a) of the Rules Governing Section 2255 Cases. The court concludes no reasonable jurist could find the court's assessment of most of Mr. Bush's claims debatable or wrong. The court thus denies a COA on all but one claim.

The court grants a COA on Mr. Bush's ineffective assistance of counsel claim based on Mr. Naseem's failure to object to the prosecutor's misstatement of the presumption of innocence at closing arguments. The court concluded the prosecutor had misstated the law. *See above* § IV.A.3.a. But it evaluated trial counsel's failure to object solely under the prejudice prong of the *Strickland* test, concluding Mr. Bush failed to show the results of the trial would've differed, had counsel objected. *See above* § IV.A.3.b. Because there was an uncorrected misstatement of law, and the prejudice analysis presented a closer call, the court concludes a reasonable jurist could find the court's assessment of this issue debatable. The court thus grants a COA on this lone claim.

## VII.    Status Request (Doc. 429)

On July 25, 2025, Mr. Bush filed a status request on his § 2255 motion. *See* Doc. 429 (requesting status update, mailing new documents in his case, and updating mailing address). His request explained he hadn't received any communications from the court since he filed his reply brief. *Id.* at 2. And he asked whether the court needed additional information from him to rule his motion. *Id.* This Order rules Mr. Bush's § 2255 motion. The court has issued no other orders, and the government has filed no other documents, between Mr. Bush's reply filing and

today.  The court directs the Clerk of the Court to mail a copy of this Order to Mr. Bush at his updated address.

## VIII.  Conclusion

The court rejects Mr. Bush's ineffective assistance of counsel claims on all fronts.  And it rejects Mr. Bush's cumulative error argument.  The record in this case, and Mr. Bush's allegations, conclusively show Mr. Bush isn't entitled to relief on his § 2255 motion.  So, the court likewise rejects Mr. Bush's request for an evidentiary hearing.  The court grants Mr. Bush a COA on one of his claims (failure to object to prosecutor's statement) but denies a COA on all the others.  Mr. Bush hasn't satisfied his burden under § 2255 to show his sentence was imposed in violation of the Constitution or laws of the United States.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Bush's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 399) is denied.

**IT IS FURTHER ORDERED THAT** a certificate of appealability shall issue consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED THAT** the Clerk of Court should mail a copy of this Order to Mr. Bush at his new address.

**IT IS SO ORDERED.**

**Dated this 1st day of August, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
